NATIONWIDE INSURANCE COMPANY, APPELLEE, *v.*
AUTO-OWNERS MUTUAL INSURANCE COMPANY, APPELLANT, ET AL.

(No. 86AP-1000—Decided
April 7, 1987.)

*Enz, Jones & LeGrand, Grey W. Jones* and *James P. Seguin,* for appellee.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A.,* and *Robert E. Lee,* for appellant.

YOUNG, J. Nationwide Insurance Company ("Nationwide") brought this declaratory judgment action to determine whether its homeowners policy or Auto-Owners Mutual Insurance Company's automobile liability policy would be primarily responsible for a hunting accident involving Mickey Charles, holder of both policies at the time of the accident. The stipulated facts are as follows:

"On November 30, 1983, Danny Charles, Laura A. Charles, Donald Charles, and Mickey Charles were deer hunting in Perry Township, Licking County, Ohio. Upon conclusion of the outing, the individuals returned to Mickey Charles' vehicle, and Danny Charles climbed into and was sitting in the passenger seat of a 1983 Ford one-half ton pickup owned by Mickey Charles.

"Mickey Charles was standing at the left side of the pickup near the left, rear wheel ejecting the shells from his shotgun into the bed of the truck. He had the safety on and his finger off of the trigger. The gun suddenly and accidentally discharged, and a slug penetrated the bed of the pickup, striking Danny Charles.

"Mickey Charles had intended, after unloading the gun, to put it inside of the cab of the truck behind the seat, to transport the gun and leave the area.

"At the time of the accident, the Plaintiff, Nationwide Insurance Company, had in full force and effect an elite homeowners policy of insurance being policy number 91-HO-019-374. At the time of the accident, the Defendant, Auto-Owners Insurance Company, had in full force and effect an automobile liability policy insuring the 1983 Ford pickup truck under policy number 830103 05295401."

The trial court found that the ejection of the shotgun shells onto the bed of the truck constituted a "loading" which brought the act within the intended coverage of Auto-Owners' automobile policy. However, since the Nationwide homeowners policy contained an exclusion for "loading and

unloading" a land motor vehicle, the trial court found that the homeowners policy did not apply. Based on this analysis, the trial court granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment. This appeal followed. Appellant asserts the following sole assignment of error:

"The court of common pleas erred in granting plaintiff-appellee summary judgment, finding that there was no genuine issue of material fact and denying defendant-appellant's motion for summary judgment."

The facts before this court present a case of first impression. Due to the diligent effort of both attorneys, we have been cited to case law from other jurisdictions that is persuasive. The parties contend that liability coverage depends on whether the acts of the insured constituted a "loading or unloading" of a vehicle and that the two policies afforded complementary coverage, thus making only one liable. However, in reviewing the factual situation this court is not concerned with an analysis of whether, and to what extent, the two policies provide complementary coverage. The duty of this court is simply to independently examine the terms of each policy and decide which policy affords coverage given the stipulated facts. The Nationwide Elite homeowners policy will necessarily be considered first.

Section II of the homeowners policy, titled "Protection Against Liability," states, in pertinent part:

"Section II of this Homeowners Policy insures those named in the Declarations against loss from damages for negligent *personal acts* or damage for negligence arising out of the ownership, maintenance or use of real or *personal property* * * *." (Emphasis added.)

However, the homeowners policy also contains an exclusion providing that coverage does not extend to "the ownership, maintenance, operation or use, including loading or unloading, of land motor vehicles * * *."

The court below held:

"* * * The act of ejecting the shells into the truck bed in preparation of loading the gun into the cab constitutes a 'loading' sufficient to bring the insured's act within the scope of the intended coverage of Defendant Auto-Owners Insurance Company's policy. Having found that a 'loading' took place, the Court further finds that such loading falls within a specific policy exclusion under the Nationwide policy."

Appellee contends that the ejection of the shells was part of the loading process and therefore the provision in the homeowners policy excluding coverage for the loading or unloading of a land motor vehicle releases it from liability. Upon review of the record and an independent consideration of the appropriate area of the law, there is no precise definition of the phrase "loading or unloading." This language is found in both the homeowners policy and the automobile policy. Furthermore, upon review of the case law provided by both counsel, it is evident that the leading cases in this area involve commercial "loading or unloading." The phrase "loading or unloading" has generally been recognized to be one of extension, expanding the normal meaning of the word "use." 12 Couch on Insurance 2d (1981 Rev. Ed.) 371, Section 45:126. But, the trial court did not need to rely on the "loading or unloading" extension. Consequently, it was inappropriate to apply this analysis to both policies in a complementary manner.

Ohio has traditionally given a liberal interpretation to insurance coverage. Ambiguities within a policy are always resolved in the favor of the insured. *Bobier* v. *Natl. Cas. Co.* (1944), 143 Ohio St. 215, 28 O.O. 138, 54 N.E. 2d 798, paragraphs two and three of the syllabus. Likewise, exceptions or

exclusions in insurance policies are strictly construed in favor of the insured and against the insurer. 2 Couch on Insurance 2d (1984 Rev. Ed.) 439, Section 15:93.

Language used in an insurance contract is given its ordinary and commonly accepted meaning. *Bobier, supra,* at paragraph one of the syllabus. It is the opinion of this court that in view of the liberal construction by the Ohio courts of contracts of insurance that it would be inappropriate to apply the phrase "loading or unloading" in the manner argued by appellee.

Section II of the homeowners policy provides coverage "from damages for negligent personal acts" and "damage for negligence arising out of the ownership, maintenance or use of real or personal property * * *." Given its clear and precise meaning, this provision provides coverage for the negligent personal act of Mickey Charles when his gun, his own personal property, accidentally fired while he ejected its shells onto the bed of the truck, thereby causing injury to his brother. Thus, the general negligence provision of Nationwide's homeowners policy imposes personal liability coverage upon appellee according to the terms of the policy.

The policy issued by Auto-Owners for automobile liability is more specific in outlining its coverage. The Auto-Owners policy states the following in Section 1, Coverages:

"To pay on behalf of the insured * * * and *arising out of the* ownership, maintenance or *use,* including the loading or unloading thereof, of the automobile." (Emphasis added.)

All the cases cited by counsel agree that a causal relation or connection must exist between the accident or injury and the "ownership, maintenance or use" of a vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the ownership, maintenance or use" of a vehicle. Where such causal connection or relation is absent, coverage will be denied. See Annotation (1963), 89 A.L.R. 2d 150, 153.

A number of authorities in this area define the term "arising out of" to mean "originating from" or "growing out of" or "flowing from." Annotation, *supra,* 89 A.L.R. 2d at 161. The term has also been used to mean "causally connected with, not proximately caused by." See *Manufacturers Cas. Ins. Co.* v. *Goodville Mut. Cas. Co.* (1961), 403 Pa. 603, 607, 170 A. 2d 571, 573. Therefore, the issue is not one of proximate cause. It is sufficient if the use is connected with the accident or the creation of a condition that caused the accident. The consensus is that the issue is not one of proximate cause but the requirement of some causal relation or connection.

In the facts before this court, the situs of the accident was, in fact, in and near a truck. From the standpoint of causation, this injury could have occurred twenty-five feet away, a hundred feet away, in a hunting lodge, or in a myriad of different locations. The fact that both the tortfeasor and the injured party were "using" the truck at the time does not, in itself, make the injury one "arising out of the * * * use" of the motor vehicle.

While almost any actual causal connection or relationship will meet the test of "arising out of the use of a vehicle," it is required that there be a factual connection growing out of or originating with the use of the vehicle. Unquestionably the truck was in "use" at the time of the accident since Mickey Charles was ejecting his shells onto the bed of the truck and his brother was sitting in the cab. A further relevant inquiry is whether any relationship existed between this use of the vehicle and the fortuitous firing

of the gun. "In determining whether a person was in such a position in relation to [an] automobile as to be injured in its use, consideration must be given, not only to what [the] person was doing when injured, but also to his purpose and intent." (Footnote omitted.) 6B Appleman, Insurance Law and Practice (1979 Rev. Buckley Ed.) 357, 367, Section 4317.

R.C. 2923.16, improperly handling firearms in a motor vehicle, states in part:

"(A) No person shall knowingly discharge a firearm while in or on a motor vehicle.

"(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle, in such manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

"(C) No person shall knowingly transport or have a firearm in a motor vehicle, unless it is unloaded, and is carried in one of the following ways:

"(1) In a closed package, box, or case;

"(2) In a compartment which can be reached only by leaving the vehicle;

"(3) In plain sight and secured in a rack or holder made for the purpose;

"(4) In plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight."

Mickey Charles was complying with the requirements of an Ohio statute when he was ejecting the shells from the shotgun which he intended to place in the truck. See *Allstate Ins. Co. v. Valdez* (E.D. Mich. 1961), 190 F. Supp. 893, 896. In order for him to properly "use" his truck, he was required to comply with R.C. 2923.16. Thus, a foreseeable risk and a sufficient causal relationship existed between the policy prerequisite, "arising out of the use" of the vehicle, and the accidental discharge of the shotgun. Mickey Charles' compliance with R.C. 2923.16 created the condition that caused the accident. His compliance with R.C. 2923.16 was a prerequisite to his leaving in the truck, and the injury originated from the use of the vehicle as such. Cf. *Mason* v. *Celina Mut. Ins. Co.* (1967), 161 Colo. 442, 423 P. 2d 24. The insured's vehicle was being used to transport the men and their weapons on a hunting trip. This was a proper use of the truck and was foreseeable. As part of this use it was necessary that the guns be placed in the truck and the ammunition removed for that purpose. The injury was thus connected with the use of the truck as a means of transporting the parties' hunting equipment and this relation was sufficient to come under the terms of the automobile policy. See *Toler* v. *Country Mut. Ins. Co.* (1984), 123 Ill. App. 3d 386, 462 N.E. 2d 909. The vehicle contributed in some fashion toward producing the injury and was more than simply the place in which the injury occurred. Consequently, the acts of Mickey Charles are within the coverage offered by the Auto-Owners automobile policy since his conduct arose out of the "use" of the vehicle. *Transamerica Ins. Group* v. *United Pacific Ins. Co.* (1978), 20 Wash. App. 138, 579 P. 2d 991, affirmed and remanded (1979), 92 Wash. 2d 21, 593 P. 2d 156.

Nationwide's homeowners policy contains the following provision:

"OTHER INSURANCE. If the Insured has other insurance against a loss for which he is held legally liable, other than Guests Medical Expenses, Nationwide shall not be liable for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total of all insurance against such loss. Provided that with respect to loss arising out of the ownership, maintenance, op-

eration, use, loading or unloading of (1) any automobile or midget automobile at the premises or the ways immediately adjoining, or (2) watercraft, this insurance shall not apply to the extent that any valid and collectible insurance, whether on a primary, excess or contingent basis, is available to the Insured."

The record does not contain a complete copy of Auto-Owners' automobile policy so it is inconclusive whether that policy contains a similar "other insurance" clause. However, given the disposition of this court as to the applicability of both policies in this instance, Nationwide and Auto-Owners are liable, as a matter of law, to the insured on a pro-rata basis.

Appellant's assignment of error is overruled in part and sustained in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings in accordance with law consistent with this decision.

*Judgment affirmed in part, reversed in part, and cause remanded.*

McCormac and Bryant, JJ., concur.