Harold A. BARGE, et al., Plaintiffs,

v.

Michael JABER, et al., Defendants.

No. C–1–91–031.

United States District Court,
S.D. Ohio, W.D.

Aug. 27, 1993.

James R. Matthews, Keating, Muething & Klekamp, Cincinnati, OH, for Scott Allen Barge, Harold A. Barge and June Barge.

John G. Patten, Jr., Wilder, KY, for Safeco Ins. Co. of America.

Joseph Warren Gelwicks, Rendigs, Fry, Kiely & Dennis, and Kenneth Bruce Flacks, Cincinnati, OH, for Michael Jaber.

Timothy Paul Heather, Benjamin, Yocum & Heather, Cincinnati, OH, for Anthony J. Raniero.

Jay Richard Langenbahn, Lindhorst & Dreidame, Cincinnati, OH, for Northfield Ins. Co.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Supplemental Defendants' Motion to Dismiss or for Summary Judgement (doc. 37), the Plaintiffs' Cross–Motion for Summary Judgement and Memorandum in Opposition to the Supplemental Defendants' Motion (doc. 38), the Supplemental Defendants' Reply and Memorandum in Opposition to the Plaintiffs' Motion (doc. 41), and the Plaintiffs' Reply (doc. 43).

## BACKGROUND

On September 23, 1990, Cinderella Carriage Company ("Cinderella" or the "Insured"), a Kentucky corporation engaged in the business of providing horses and carriage rides, had a contract to provide horse carriage rides at a location in Indiana. Michael Jaber, an employee of Cinderella, was instructed to pick up a carriage in Cincinnati, Ohio and transport it to Indiana for the purpose of fulfilling the contract.

Upon learning that his truck would not start, Jaber contacted a friend, Anthony Raniero, in order to use Raniero's truck to pick up the carriage in Cincinnati and transport it to Indiana. The two attached a trailer belonging to Jaber to Raniero's truck. Unfortunately, the two used the wrong size towing ball for the trailer and failed to attach safety chains between the truck and trailer. The trailer broke free on I–71 in downtown Cincinnati, causing an accident which resulted in severe injuries to two of the Plaintiffs in this action ("Plaintiffs" or the "Barges").

As a result of the accident, the Plaintiffs filed an action against Cinderella. Cinderella in turn contacted its insurer, Northfield Insurance Company ("Northfield"), the Supplemental Defendant in this action. Northfield refused to defend Cinderella, and Cinderella failed to answer. This Court entered a default judgment against Cinderella on December 12, 1991.

The Plaintiffs then requested Northfield to pay its limit plus interest under the General Commercial Liability Policy it issued to Cinderella. Northfield refused, claiming that accident was exempt from coverage under a standard "auto exception" clause in the policy. It also claimed that absent the exception, the accident occurred outside the scope of the insurance policy which covered, according to Northfield, only accidents arising solely out of the horse carriage rides.

The Plaintiffs filed a supplemental petition in this Court seeking judgment against Northfield. Northfield, however, filed an action in state court in Kentucky seeking a declaratory judgment against Cinderella, to the effect that the accident was not within the scope of the policy's coverage. The Kentucky court found in favor of Northfield,

concluding that the "accident [was] too remote to the specific policy classification of providing 'horse carriage rides.'" See Supplemental Defendants' Motion to Dismiss or for Summary Judgement, Doc. 37, Exhibit "A" at 2.

Northfield now moves this Court to dismiss, or for summary judgment claiming that 1) the Kentucky judgment in its favor precludes this action; 2) the accident was excluded from the scope of the policy's coverage by virtue of the policy's "auto exception" clause; and 3) the accident was outside of the scope of the policy's coverage of injuries arising out of "horse carriage rides."

The Plaintiffs, on the other hand, claim that 1) the Kentucky judgment is not binding on this Court; 2) the "auto exception" provision is inapplicable to this case; and 3) the accident was clearly within the scope of the policy's coverage.

After careful consideration, the Court finds that the Kentucky judgment is not binding on this Court. We further find that there are no genuine issues of material fact in dispute. Finally, we hold that under the applicable theories of insurance law, the insurance policy's "auto exception" is applicable in this case, and the Defendant is entitled to judgment as a matter of law. We therefore conclude that the Supplemental Defendant's motion should be granted, and this case should be dismissed.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgement as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.
>
> *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2552; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" *Guarino,* 980 F.2d at 405 (quoting *Inter–Royal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## ANALYSIS

### I

### CHOICE OF LAW

As an initial matter, in this diversity suit, we must turn to Ohio choice of law principles to determine whether Ohio or Ken-

tucky law should be applied in this case. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Boys v. LaMaster*, 927 F.2d 237, 239 (6th Cir.1991). While traditionally under Ohio choice of law principles, Ohio courts have applied the law of the state where the insurance contract was made, *see generally*, 16 Ohio Jur.2d Conflicts of Laws § 18 (1979 & Supp.1993), this principle should not be applied rigidly. In *Paul v. West American Ins. Co.*, 19 Ohio App.3d 82, 482 N.E.2d 1309 (1984), for example, the Ohio court of appeals for Hamilton County applied the conflicts of laws doctrine of "interest analysis." *Id.* at 84, 482 N.E.2d 1309. Under this mode of analysis, the court must take into consideration numerous factors in deciding what law to apply. Included among those factors to be consider are a) whether the forum state or any other state involved in the action has a substantial interest in application of its law in the case at hand; and b) whether the interest of one of the states involved outweighs that of the other. Under this theory, the state with the greater interest in the matter should have its law applied. *Id.*

In this case, it is no simple task to determine which state's law should apply. Under the traditional theory, the law of Kentucky would apply, as the insurance policy was apparently made in Kentucky, the insured is a Kentucky Corporation, and the insurance agent is based in Kentucky as well. On the other hand, under the "interest analysis" approach, the Plaintiffs in this case are not only Ohio residents, but the injuries occurred in Ohio. The State of Ohio, therefore, would logically have a substantial interest in the application of its own laws, to its own citizens, who were injured within its borders. Clearly, there is no simple answer to the question of which law should apply.

Although it would appear that the balance of interests lean in favor of the application of Ohio law, after carefully considering the issues involved in this case, in conjunction with the applicable area of insurance law, we conclude that the result would be identical whether this Court applied Ohio or Kentucky law. We therefore deem it unnecessary to draw a definitive conclusion in this case with respect to which law is applicable, as we conclude that the courts of either state would reach the same result. *See* Restatement, Conflicts of laws 2d § 186, Comment c.

## II

### THE KENTUCKY ACTION

First, Northfield claims that this action is barred by virtue of the judgement rendered in its favor in the Kentucky action. We disagree. In the Kentucky case, Northfield brought a declaratory judgement action seeking a determination that no coverage existed under the Northfield policy at issue in this case. In that case, in which Northfield was the plaintiff and Cinderella Carriage Company was the defendant, the court granted summary judgment in favor of Northfield, holding that the accident was outside of the scope of the policy's coverage. The Barges, despite their vital interests in the case, were not a party to that law suit. We find that the Kentucky judgment does not preclude the present action for the reasons that follow.

It is well established that the doctrine of res judicata and collateral estoppel require mutuality of parties in order to preclude relitigation in a subsequent action. *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 202, 203, 443 N.E.2d 978 (1983); *see State ex rel. Bookpark Ent. Inc. v. Cuyahoga County*, 60 Ohio St.3d 44, 573 N.E.2d 596 (1991); *State ex rel. Bush v. Spurlock*, 63 Ohio St.3d 453, 456, 588 N.E.2d 840 (1992). The judgement in an earlier action, therefore, can not have a preclusive effect in a subsequent action where one of the parties in the second action was not a party in the first, and therefore did not have "a fair opportunity to fully litigate ..." the issues. *Goodson*, 2 Ohio St.3d at 203, 443 N.E.2d 978; *Ex rel. Bookpark Ent. Inc.*, 60 Ohio St.3d 44, 573 N.E.2d 596; *Ex rel. Bush*, 63 Ohio St.3d at 456, 588 N.E.2d 840. As the Ohio Supreme Court succinctly stated, collateral estoppel may be "applied only when the party seeking to use the prior judgment and the party against whom the judgment is being asserted were parties to the original judgment or in privity with those parties."

*Goodson*, 2 Ohio St.3d at 202, 443 N.E.2d 978.

In the case at bar the party against whom the judgment is being asserted—the Barges—was not a party · in the previous action. The Plaintiffs, therefore, in the Kentucky action, did not have a full and fair opportunity to litigate this matter as is required under the doctrine of collateral estoppel in order to bind a party to the judgment of a previous action. *See Goodson*, 2 Ohio St.3d at 201, 443 N.E.2d 978; *Ex rel. Bookpark*, 60 Ohio St.3d 44, 573 N.E.2d 596; *Ex rel. Bush*, 63 Ohio St.3d at 456, 588 N.E.2d 840.

We therefore conclude that because the Plaintiffs in the case at bar were not parties to the Kentucky action, and were therefore deprived an opportunity to fully and fairly litigate those issues so crucial to their rights and interests, the Kentucky action is not binding on the Plaintiffs in this case.

## III

### THE "AUTO" EXCEPTION

■ Second, the Defendant claims that the standard "auto exception" clause contained in the policy excludes the accident in which the Plaintiffs were involved from the scope of the policy's coverage. As both sides agree, the policy excludes from coverage,

> "[b]odily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or water craft owned or operated by or rented or loaned to any insured.... [1]

The Defendant claims that under the plain language of the policy, the injuries sustained in this case clearly arise out of the use of an "auto" and are therefore excluded from coverage under the policy. The defendant further asserts that even though the truck was not owned by the insured carriage company, the fact that the truck was "loaned to" an employee of the insured who was acting within the scope of his employment, and in furtherance of the insured's business, the exclusion applies.

The Plaintiff, on the other hand, claims that the "auto exception" is inapplicable in cases, despite the plain language of the exception, "where negligence apart from the operation of an automobile contributed to the accident." See Plaintiffs' Cross Motion for Summary Judgment and Memorandum in Opposition to Defendant's Motion, doc. 38 at 8. The Plaintiffs assert that this is just such a case. The Plaintiffs further claim that the truck was neither "operated by" nor "loaned to" the insured carriage Company.

■ First, we note that the burden of proof is on the insurance company to establish the applicability of an exclusion contained in a policy which the insurance company claims is applicable. *See Continental Ins. Co. v. Louis Marx & Co., Inc.*, 64 Ohio St.2d 399, 401, 415 N.E.2d 315 (1980). After a thorough examination of the case law as applied to the facts of this case, we find that Northfield has sustained its burden. Consequently, we conclude that the "auto exception" applies, precluding coverage in this case.

As the Plaintiffs correctly point out, some cases have held that, under specific circumstances, "auto exception" clauses using similar or identical language to the policy in question, do not preclude coverage despite the fact that a vehicle "operated by" or "loaned to" an insured was involved in some way in an accident. These case have held that "where two separate, independent acts of negligence combine to cause injury and one of those acts is excluded from coverage ... [under the "auto exception,"] the policy will still cover the damage incurred if the other act of negligence is not excluded under the policy." *Sharp v. Indiana Union Mut. Ins. Co.*, 526 N.E.2d 237, 240 (Ind.Ct.App. 1988). These cases, however, are inapplicable to the case at bar.

The line of cases relied upon by the Plaintiff, which have held the "auto exception" clauses inapplicable, have all hinged their rulings on one essential element not present in the case at bar: the existence of a wholly

---

1. As defined by the policy, an "auto" "means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment...."

independent, non-vehicle related act of negligence which, separate and apart from the presence of an automobile, caused the injuries. The most important, and in fact, conclusive, factor in these cases which prompted the various courts to find inapplicable the "auto exception" clause, therefore, was the presence of an act of negligence wholly separate and independent of the use or operation of a motor vehicle. *See, e.g., Richland Knox Mut. Ins. Co. v. Kallen*, 376 F.2d 360, 364–64 (6th Cir.1967) (Peck, J.) (where negligent lighting of fire cracker inside car caused injuries and "the location of the parties inside the car was purely incidental" "auto exception" clause held inapplicable); *Wirth v. Maryland Cas. Co.*, 368 F.Supp. 789, 792 (W.D.Ky.1973), *aff'd*, 497 F.2d 925 (6th Cir. 1974) (lighting of fire cracker inside of car was cause of injuries and thus injuries did not arise out of the use of an automobile); *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887–88 (S.Ct.Tenn.1991) (where non-auto related acts of negligence constitute a "substantial" factor in causing injuries and auto was mere "situs" of accident "auto exception" clause should not apply); *Nationwide Ins. Co. v. Auto–Owners Mut. Ins. Co.*, 37 Ohio App.3d 199, 202, 525 N.E.2d 508 (Ohio App. 10th Dist.1987) (where injury resulting from ejection of live shotgun shells into bed of pickup truck could have happened regardless of truck which was "situs" of accident "auto exception" clause held inapplicable); *Waseca Mut. v. Noska*, 331 N.W.2d 917, 921–23 (Minn.1983) (negligent act of placing live embers in an uncovered barrel with other debris was independent non-automobile related cause of fire and thus "auto exception" clause was inapplicable); *State Farm Mutual Automobile Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 817, 514 P.2d 123, 129 (1973) (independent, non-auto related act of negligent tampering with pistol held sufficient to render "auto exception" clause inapplicable although automobile was situs of injuries); *U.S.F & G. v. Western Fire Ins. Co.*, 450 S.W.2d 491 (Ky.1970) (accidental discharge of a pistol within an automobile did not "arise from" the use of an automobile).

A review of these cases quickly reveals their inapplicability to the case at bar. These case have unequivocally held that the non-auto related acts were, in and of themselves, the cause of the injuries, and that the vehicle was little more than the "situs" of the accident, much less the cause. The non-auto related acts of negligence, therefore, were wholly separate and independent from the use of the auto.

On the contrary, where, as here, the injuries were dependent on, and inextricably intertwined with, the use of a vehicle, the auto exception was found to apply, and coverage was precluded. *See, e.g., Standard Mut. Ins. Co. v. Bailey*, 868 F.2d 893, 899–900 (7th Cir.1989) (act of negligently entrusting motor vehicle to another individual was "not independent of, but rather inextricably intertwined with ... ownership, operation, and use of a motor vehicle" thus "auto exception" held applicable); *U.S. Fidelity Guar. Co. v. Hetlsley,* 733 F.Supp. 1418, 1424 (D.Kan. 1990) (negligently failing to use car seats and seat belts appropriate for children resulting in injury to child held to "directly relate to the use ... of the insured's car" thus "auto exception" held applicable); *Sharp v. Indiana Union Mut. Ins. Co.*, 526 N.E.2d 237, 240 (Ind.Ct.App.1988) (in case involving drunk driving accident the court held act of drinking until intoxicated at home before driving "did not cause any injury independent of the use of [the] motor vehicle" and thus auto exception was held applicable) *Atkins v. Bellefonte Ins. Co.*, 342 So.2d 837, 838 (Fla.App.1977) (auto exception held applicable because not only "was the plaintiff's damage a primary consequence of the school's use of the vehicle, but also it could not have occurred without the use of the school's motor vehicle").

With respect to those cases holding the "auto exception" inapplicable, *State Farm Mutual Automobile Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 817, 514 P.2d 123, 129 (1973), cited above, is illustrative. *Partridge* involved a homeowner's policy which contained an "auto exception" clause virtually identical in all relevant aspects to the one at issue here. In *Partridge*, the insured negligently tampered with the trigger mechanism of a pistol in order to create a "hair trigger." The court observed that the

filing of the trigger made the gun extraordinarily dangerous.

Subsequently, while the insured was hunting rabbits from his moving automobile, he rested the gun on the steering wheel of his car. The car hit a bump, and the gun discharged and hit a passenger. The court held that the "auto exception" did not apply because, although the use of a vehicle was involved in the injuries, the non-vehicular act of negligently tampering with the gun was a wholly separate and independent cause of the injuries. The court noted that the use of the car was tangential to the causing of the injuries, and that the injuries were the result of the negligently modified pistol. The accident, the court continued, could have occurred, "while the insured was walking down the street or running through the woods...." *Id.* at 817, 109 Cal.Rptr. at 817, 514 P.2d at 129. Thus, the court concluded,

> [i]n the instant case, however, although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries.... [B]ecause of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from the non-auto-related conduct, and exists independently of any 'use' if his car, we believe the ..." auto exception is inapplicable.

*Id.*

Similarly, in *Richland Knox Mut. Ins. Co. v. Kallen,* 376 F.2d 360, 364–64 (6th Cir.1967) (Peck, J.), an individual attempted to throw a lit fire cracker out of a car window. Missing the window, the fire cracker exploded in the car injuring a passenger. Although this negligent act clearly involved an automobile, the Sixth Circuit held that the auto exception did not apply, despite the "use" of the vehicle. The court noted that the "location of the parties inside the vehicle was purely incidental." *Id.* The court also observed that "the lighting of the fire cracker inside the car does not involve the use of a car, any more than the lighting of a fire cracker during business hours is a business pursuit." *Id.* Thus, as the negligent act which caused the injuries was wholly independent from the use of the vehicle, and the auto was merely the "situs" of the injury, the auto exception did not apply. As the Supreme Court of Tennessee observed in a case dealing with a similar "auto exception" clause, "[c]overage is not vitiated because a truck, or the area around it, was merely the situs of the purported negligence". *Allstate Ins. Co. v. Watts,* 811 S.W.2d 883, 887–88 (S.Ct.Tenn.1991).

Finally, the Ohio Court of Appeals for the Tenth Appellate District reached a conclusion in harmony with these cases. In *Nationwide Ins. Co. v. Auto–Owners Mut. Ins. Co.,* 37 Ohio App.3d 199, 202, 525 N.E.2d 508 (Ohio App. 10th Dist.1987), a group of people went deer hunting. At the end of the trip, prior to departing, one of the party proceeded to unload his shotgun by ejecting the shells into the bed of the pickup truck in which they had arrived. The gun accidentally discharged, striking another member of the group who was sitting in the truck.

In holding that the auto exception of the tort-feasor's insurance policy did not apply, the court observed that, although the truck was the "situs" of the accident,

> [f]rom the standpoint of causation, this injury could have occurred twenty-five feet away, a hundred feet away, in a hunting lodge, or in a myriad of different locations. The fact that the tort-feasor and the injured party were 'using' the truck at the time does not, in itself, make the injury ... [one within the scope of the auto exception].

*Id.* at 202, 525 N.E.2d 508.

It is thus clear that the gravamen of the these rulings was the fact that not only was the vehicle a non-essential element of the cause of the injuries, but the actual cause was a wholly independent, non-vehicle related act. This the courts found, was sufficient to remove the injury from the scope of the auto exception.

Conversely, in cases similar to the case at bar, the "use" of the automobile was inextricably intertwined with the injuries. In such cases, no independent, non-auto related negligent act contributed to the infliction of injuries. Thus, under the plain language of the policies, the "auto exception" was held to

apply, and the accidents were exempt from the scope of coverage.

For example, in *Sharp v. Indiana Union Mut. Ins. Co.*, 526 N.E.2d 237, 240 (Ind.Ct. App.1988), an intoxicated driver hit another automobile causing injuries to the other driver who later sued the drunk driver's homeowner's insurance company. The plaintiff, making claims similar to those advanced in this case, asserted that the policy's "auto exception" did not apply because the insured's act of drinking until intoxicated in his home prior to entering the vehicle, was a separate and independent cause of injuries. The court disagreed, noting that the Plaintiffs were incorrect in their assertion that the insured's drinking of alcohol to the point of intoxication was a separate and independent cause of the injuries. The court concluded,

> [a]ssuming without deciding that [the insured's] excessive consumption of alcohol while in the privacy of his own home constituted a negligent act, this act is insufficient to overcome the automobile exclusion clause in the case at bar. [The insured's] consumption of alcohol prior to driving his automobile did not cause any injury which was independent of the use of his motor vehicle. It is only the act of driving an automobile while intoxicated that causes injuries or gives rise to an accident.

Likewise, in *Standard Mut. Ins. Co. v. Bailey*, 868 F.2d 893, 899–900 (7th Cir.1989), a negligent entrustment case, the plaintiffs attempted to persuade the court that the negligent act of lending the automobile to a third person with the knowledge that the third person would use the vehicle in a negligent manner, was a wholly independent cause of the injuries, and was thus sufficient to remove the case from the scope of the "auto exception" clause of a homeowner's insurance policy. The court disagreed, stating the negligent act of entrusting the vehicle

> is not independent of, but rather inextricably intertwined with, the more general concept of ... use of a motor vehicle. It is also apparent that liability on the part of the entrustor is not triggered until the entrustee acts in a negligent manner while operating the motor vehicle.

*Id.* at 898. The court continued that "[r]egardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the ... automobile." *Id.* at 900 (citations and quotations omitted).

Thus, there is a crucial difference between the cases holding the "auto exclusion" inapplicable and those holding to the contrary. Where the "auto exception" applied and coverage was precluded, the use of the vehicle was a central and indispensable element, inextricably intertwined with the cause of the injuries. In the other cases which, despite the plain language of the policy, held the "auto exception" inapplicable, the negligent act which caused the injuries was a wholly separate and independent act which could have occurred regardless of the use of a vehicle. As discussed above, in these case, the courts held that the vehicle was little, if anything, more than the "situs" of the injury, and that the injury-causing act of negligence could have occurred without the contribution of the vehicle. The filing of the trigger mechanism of a pistol, or accidentally discharging a shotgun while attempting to unload it, are negligent acts which need no automobile to cause injury. *See State Farm Mutual Automobile Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 817, 514 P.2d 123, 129 (1973); *Nationwide Ins. Co. v. Auto–Owners Mut. Ins. Co.*, 37 Ohio App.3d 199, 202, 525 N.E.2d 508 (Ohio App. 10th Dist.1987). Rather, those negligent acts could have caused injuries "while the insured was walking down the street or running through the woods ..." *Partridge*, 109 Cal. Rptr. at 817, 514 P.2d at 129, "or could have occurred twenty-five feet away, [or] a hundred feet away ... or in a myriad of different locations." *Nationwide*, 37 Ohio App.3d at 202, 525 N.E.2d 508.

The accident in the case at bar, however, it is clear, is one arising solely out of the use of an automobile. Improperly hooking the trailer without safety chains, like drinking until intoxicated in one's own home, was of no consequence and no risk whatsoever without the use of a vehicle. If the trailer were hooked to anything other than a functioning vehicle, and if that vehicle was not driven, there would have been no risk—remove the

vehicle and remove the hazard. The act of improperly hooking up the trailer without safety chains could "not cause any injury which was independent of the use of [the] motor vehicle. It [was] only the act of driving an automobile while ..." the trailer was improperly hooked up, that caused the "injuries or g[a]ve[ ] rise to an accident." *See Sharp,* 526 N.E.2d at 240.

Hence, the injuries arose solely out of the use of a vehicle, and not from any, non-vehicular act which could have alone caused any injuries, and thus, the vehicle was not a mere situs of the accident. We therefore conclude that the negligent act in this case was inextricably intertwined with the use of a vehicle. The accident was wholly related to, and dependant upon, the use of the vehicle, and no independent, non-vehicular factor contributed to the injuries. Consequently, we hold that the cases relied upon by the Plaintiffs are inapposite, the accident in this case fits within the scope of Northfield's "auto exception" clause, and the insurance policy does not cover the accident in this case.

Finally, while the Plaintiff admits on the one hand that the injuries were caused by the carriage company's employees and agents acting within the scope and course of and in furtherance of the company's business, the Plaintiffs also claim on the other hand that the auto exception does not apply because the insured—the carriage company—did not "operate," or was not "loaned" the vehicle within the meaning of the "auto exception." We disagree for the following reasons.

■ It is well established that a corporation is an artificial entity that can only act through its agents. *Polazzo v. Gulf Oil,* 764 F.2d 1381, 1385 (11th Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 775 (1986); *In re Child Life Ins. Co.,* 126 B.R. 51, 53 (N.D.Ohio 1991). Thus, acts of an employee carried out within the scope of his employment, that is acts which the employee has been expressly, impliedly or apparently been authorized to do and are done for the benefit of the corporation, are properly imputed to the corporation. *Northside Realty Assoc., Inc. v. United States,* 605 F.2d 1348,

1357 n. 9 (5th Cir.1979); *Whitfield v. Century 21,* 484 F.Supp. 984, 985 (S.D.Tex.1979); 18B Am.Jur.2d Corporations § 2131 (1985). In this case, as the Plaintiffs have pointed out, Jaber, an employee of Cinderella, was to pick up a carriage on behalf of the carriage company and transport it to Indiana. In furtherance of this objective it became necessary for the employee to secure the temporary use of a vehicle owned by Raniero, a friend of the employee. The employee, therefore, borrowed the vehicle for the company's benefit, while acting within the scope of his employment.

Again, as the Plaintiffs themselves assert, this endeavor was within the scope of Jaber's employment and for the benefit of the carriage company. The purpose of the venture was to carry out the company's business. Jaber's securing the temporary use of the vehicle from Raniero in the course of and in furtherance of the corporation's business and within the scope of his employment, is a loan of the vehicle which is properly imputed to the corporation itself. *See Northside Realty,* 605 F.2d at 1357 n. 9; *Whitfield,* 484 F.Supp. at 985; 18B Am.Jur.2d Corporations § 2131 (1985). Thus, by lending his vehicle to an employee of the insured corporation, in furtherance of and in the course of the company's business and for its benefit, Raniero "loaned to" the insured company, the vehicle "used" during the accident. Therefore the injuries arose out of the "use" of the vehicle which was "loaned" to the insured within the meaning of the policy's "auto exception."

Consequently, we find the "auto exception" applicable in this case. The accident, therefore, occurred outside of the scope of coverage, under the plain language of the policy. Accordingly, as no material issues of fact are in dispute, we hereby GRANT the Defendant's Motion for Summary Judgment, and DENY the Plaintiffs' Cross–Motion for Summary Judgment, and this case is dismissed.

SO ORDERED.