39 F.3d 1181
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Scott Allen BARGE; Harold A. Barge; June Barge,
Plaintiffs-Appellants Cross-Appellees,
Safeco Insurance Company of America, Intervenor,
v.
Michael JABER; Anthony J. Raniero; Cinderella Carriage
Co., Inc., Defendants,
and
Northfield Insurance Co., a foreign insurance company with
its principal place of business in Mendota
Heights, Minnesota, Defendant-Appellee,
Cross-Appellant.
 Nos. 93-4064, 93-4146.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1994.
 
 Before: MARTIN, GUY, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs Scott Allen Barge, Harold A. Barge, and June Barge appeal from the granting of summary judgment in favor of Northfield Insurance Company (Northfield). The primary issue on appeal is whether, under an exclusionary clause relating to motor vehicle use, a commercial liability policy issued by Northfield to Cinderella Carriage Company (Cinderella) excludes coverage for an accident in which the plaintiffs were seriously injured. For the reasons that follow, we conclude the policy does not provide coverage for the losses in this case and affirm.
 
 I.
 
 2
 The relevant facts are not in dispute, and because they were thoroughly reviewed and summarized by the district court, we adopt the district court's summary as our own.
 
 
 3
 On September 23, 1990, [Cinderella], a Kentucky corporation engaged in the business of providing horses and carriage rides, had a contract to provide horse carriage rides at a location in Indiana. Michael Jaber, an employee of Cinderella, was instructed to pick up a carriage in Cincinnati, Ohio and transport it to Indiana for the purpose of fulfillingthe contract.
 
 
 4
 Upon learning that his truck would not start, Jaber contacted a friend, Anthony Raniero, in order to use Raniero's truck to pick up the carriage in Cincinnati and transport it to Indiana. The two attached a trailer belonging to Jaber to Raniero's truck. Unfortunately, the two used the wrong size towing ball for the trailer and failed to attach safety chains between the truck and trailer. The trailer broke free on I-71 in downtown Cincinnati, causing an accident which resulted in severe injuries to two of the Plaintiffs in this action....
 
 
 5
 As a result of the accident, the Plaintiffs filed an action against Cinderella. Cinderella in turn contacted its insurer, Northfield.... Northfield refused to defend Cinderella, and Cinderella failed to answer. [The district court] entered a default judgment against Cinderella on December 12, 1991.
 
 
 6
 The Plaintiffs then requested Northfield to pay its limit plus interest under the General Commercial Liability Policy it issued to Cinderella. Northfield refused, claiming that accident was exempt from coverage under a standard "auto exception" clause in the policy. It also claimed that absent the exception, the accident occurred outside the scope of the insurance policy which covered, according to Northfield, only accidents arising solely out of the horse carriage rides.
 
 
 7
 The Plaintiffs filed a supplemental petition in [the district court] seeking judgment against Northfield. Northfield, however, filed an action in state court in Kentucky seeking a declaratory judgment against Cinderella, to the effect that the accident was not within the scope of the policy's coverage. The Kentucky court found in favor of Northfield, concluding that the "accident [was] too remote to the specific policy classification of providing 'horse carriage rides.' "
 
 
 8
 Northfield [then moved the district court] to dismiss, or for summary judgment claiming that 1) the Kentucky judgment in its favor precludes this action; 2) the accident was excluded from the scope of the policy's coverage by virtue of the policy's "auto exception" clause; and 3) the accident was outside of the scope of the policy's coverage of injuries arising out of "horse carriage rides."
 
 
 9
 The Plaintiffs, on the other hand, claim[ed] that 1) the Kentucky judgment is not binding on [the district court]; 2) the "auto exception" provision is inapplicable to this case; and 3) the accident was clearly within the scope of the policy's coverage.
 
 
 10
 Barge v. Jaber, 831 F.Supp. 593, 594-95 (S.D.Ohio 1993) (citation omitted).
 
 
 11
 After careful consideration, the district court found that it was not bound by the Kentucky judgment. The court then held that there were no genuine issues of material fact in dispute; that under the relevant theories of insurance law, the insurance policy's "auto exception" was applicable; and that Northfield was entitled to judgment as a matter of law. Accordingly, the court granted Northfield's motion for summary judgment and dismissed the case.
 
 II.
 
 12
 We review a district court's grant of summary judgment under a de novo standard of review. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We examine the grant of summary judgment to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir.1989). Although we must draw all justifiable inferences in favor of the non-moving party, see Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), there must be a disagreement regarding an item of material fact. Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986).
 
 
 13
 Before the district court could evaluate the merits of the arguments raised by the plaintiffs, it first had to determine what law to apply in this diversity suit. Because the court sits in Ohio, it began its analysis by reviewing Ohio's relevant choice of law principles. The court then concluded that there were strong arguments in favor of applying Ohio law as well as strong arguments favoring Kentucky law. The court concluded it was not necessary to choose between these two bodies of law, however, because "the result would be identical" under either one. Barge, 831 F.Supp. at 596. Neither party challenges the district court's conclusion on this matter, and we find no error in its analysis.
 
 
 14
 The primary issue in this case, as noted, is whether the commercial liability policy issued by Northfield covers the damages and injuries resulting from the auto accident. As both sides agree, the policy excludes from coverage,
 
 
 15
 "[b]odily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.
 
 
 16
 (App. 225.) As defined by the policy, an "auto" "means a land motor vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment." (App. 230.)
 
 
 17
 Northfield maintains that, under the plain language of the policy, the accident in this case arose out of the use of an "auto," and therefore it is not liable for coverage. Northfield further contends that, although the truck was not owned by Cinderella, because the truck had been "loaned to" an employee of Cinderella who was acting within the scope of his employment and in furtherance of Cinderella's business, the exclusion applies.[1]
 
 
 18
 The plaintiffs argue that the "auto exception" is inapplicable "where negligence separate and apart from the operation of the automobile caused or contributed to the accident." (Plaintiffs' Brief at 8.) According to the plaintiffs, this is just such a case. The plaintiffs also claim that the exclusion only applies to an "insured's" use of an "auto," and neither Jaber nor Raniero are "insured" as defined by the policy.
 
 
 19
 We begin our analysis by noting that, based on the language of the policy, it appears the parties intended to exclude from coverage the type of accident that is at issue in this case. The definition of "auto" includes a "trailer ... designed for travel on public roads." Thus, excluded from coverage are " 'bodily injur[ies]' ... arising out of the ... use ... of any [trailer] operated by ... or loaned to any insured." At first glance it appears that the injuries suffered by the plaintiffs would fall within this definition.
 
 
 20
 Nonetheless, as the plaintiffs correctly point out, some cases have held that "auto exception" clauses using similar or identical language to the policy in question do not preclude coverage, despite the fact that a vehicle "operated by" or "loaned to" an insured was involved in some way in an accident. Under the reasoning of these cases, "where two separate, independent acts of negligence combine to cause injury and one of those acts is excluded from coverage ... [under the 'auto exception,'] the policy will still cover the damage incurred if the other act of negligence is not excluded under the policy." Sharp v. Indiana Union Mut. Ins. Co., 526 N.E.2d 237, 240 (Ind.Ct.App.1988). We have reviewed the cases cited by the plaintiffs and many others, and find the plaintiffs' reliance on them to be misplaced.
 
 
 21
 In State Farm Mutual Auto Insurance Co. v. Partridge, 514 P.2d 123 (Cal.1973), two separate insurance policies were at issue: a homeowner's policy that provided for general comprehensive liabilitycoverage and an automobile liabilitypolicy. Mr. Partridge, the insured, hunted jackrabbits. He had modified a gun's trigger mechanism by filing it to lighten the trigger pull so that the gun had a "hair trigger." Id. at 125. One evening, Partridge went hunting jackrabbits, using the gun to shoot at them out the window of his four-wheel-drive vehicle. He spotted a jackrabbit that ran off to the side of the road. To keep the jackrabbit in the car's headlights he drove off the paved road onto the adjacent rough terrain. When the vehicle hit a bump, the gun discharged, shooting and paralyzing Partridge's passenger. Id.
 
 
 22
 The California Supreme Court held that the accident was covered by both the homeowner and automobile policies. Id. There was no question that the auto insurance applied, due to the broad construction given to language in auto insurance contracts. See id. at 127-28. The homeowner's policy, however, contained an exclusionary clause that denied coverage for injuries "arising out of the ... use ... of a motor vehicle." Id. at 128. The court noted that exclusionary clauses are narrowly drawn against the insured and may not bar recovery under two policies "in ambiguous situations."
 
 
 23
 The court held there was coverage under the homeowner's policy, as well. Id. at 131. It reasoned that when two, independent, negligent acts occur to produce one injury, each act should be viewed separately to determine policy coverage. In Partridge, the negligent act of filing the trigger was not related to the use of an automobile. It created a serious hazard totally apart from the use of the car that was itself a proximate cause of the injuries. "[A]lthough the accident occurred in a vehicle, the insured's negligent modification of the gun suffice[d], in itself, to render him fully liable for the resulting injuries." Id. at 129.
 
 
 24
 A later California case expanded on the reasoning of Partridge. In State Farm Fire & Casualty Co. v. Camara, 63 Cal.App.3d 48 (Cal.Ct.App.1976), the theory of liability was the insured's negligent design, construction, and assembly of a dune buggy that the insured negligently operated while out on a hunting trip, resulting in the overturning of the vehicle and the injuring of a passenger. The court first held that the negligent design, construction, and assembly, which caused or contributed as a cause to the injury, arose out of the ownership and "use" of the vehicle, and thus there was no coverage due to the exclusionary clause of the homeowner's policy. Id. at 54. The court followed the rule that "[t]he term ["use"] is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." Id.
 
 The court then observed:
 
 25
 [T]he injury in the instant case did not involve an instrumentality other than and separate from the vehicle itself. Under the undisputed facts, the accident would not have happened [b]ut for the defendant's design and construction of the dune buggy. But it does not follow that the accident did not [a]rise out of the operation or use of a motor vehicle. The facts show the contrary. As Partridge held, the non-vehicle-related cause must be independent of the vehicle-related cause in order for the liability to be covered by the homeowner's policy. Although the operation or use of the dune buggy was not the sole cause of the accident, any contributing [d]esign cause was dependent upon such operation or use, such that any liability for negligent design necessarily arose out of the operation or use of the motor vehicle.
 
 
 26
 In other words, the [o]nly way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle. Under such circumstances defendant's asserted liability could not but arise out of the ownership, maintenance, operation or use of the vehicle; it was therefore excluded.
 
 
 27
 63 Cal.App.3d at 54-55 (footnote omitted).
 
 
 28
 In Richland Knox Mutual Insurance Co. v. Kallen, 376 F.2d 360 (6th Cir.1967), defendant Kallen attempted to throw a firecracker out of a car window. Id. at 361-62. The window was closed, however, and the firecracker exploded in the car, injuring a passenger. Although this negligent act involved an automobile, this court held that the auto exception did not apply. Id. at 365. The court noted that the "location of the parties in the car was purely incidental." Id. (quoting the opinion of the district court). The court also observed that "the lighting of a firecracker inside a car does not involve the use of a car, any more than lighting a firecracker during business hours is a business pursuit." Id. (quoting the opinion of the district court). Because the negligent act that caused the injuries was independent from the use of the vehicle, the auto exception did not apply.
 
 
 29
 The Ohio Court of Appeals for the Tenth Appellate District reached a conclusion consistent with these cases. In Nationwide Insurance Co. v. Auto-Owners Mutual Insurance Co., 525 N.E.2d 508 (Ohio Ct.App.1987), a group of people went deer hunting. At the end of the trip, one of the members of the party proceeded to unload his shotgun by ejecting the shells into the bed of the pickup truck they were using. The gun accidentally discharged, striking another member of the group who was sitting in the truck.
 
 
 30
 In holding that the auto exception of the negligent person's insurance policy did not apply, the court observed that, although the truck was the "situs" of the accident,
 
 
 31
 [f]rom the standpoint of causation, this injury could have occurred twenty-five feet away, a hundred feet away, in a hunting lodge, or in a myriad of different locations. The fact that both the tortfeasor and the injured party were "using" the truck at the time does not, in itself, make the injury one "arising out of the * * * use" of the motor vehicle.
 
 
 32
 Id. at 511.
 
 
 33
 From these cases, and several others that we have reviewed,[2] a general rule can be gleaned. When the vehicle is a non-essential element of the cause of the injuries and the actual cause was a wholly independent, non-related act, the injury will be removed from the scope of the "auto exception." Conversely, when the use of the automobile is intertwined with the negligence causing the injuries, then the "auto exception" will be held to apply.
 
 
 34
 Here, we have no alternative but to conclude that the act of negligence which caused the injuries to the plaintiffs was auto related. The failure to adequately fasten the trailer would not have been negligent were it not for use of the truck. As the district court observed, "[i]fthe trailer were hooked to anything other than a functioning vehicle, and if that vehicle [were] not driven, there would have been no risk--remove the vehicle and remove the hazard." Barge, 831 F.Supp. at 600-01. The plaintiffs' injuries arose solely out of the use of a vehicle and not from any independent, non-related negligent act. The vehicle was not the mere "situs" of the accident but was inextricably intertwined with it. Accordingly, we hold that the accident in this case falls within Northfield's "auto exception" clause and the insurance policy does not cover the plaintiffs' injuries.
 
 
 35
 The plaintiffs raise one additional argument in challenging the holding of the district court. They contend:
 
 
 36
 The auto exclusion only applies, by its express terms, to an "insured's " operation, use, entrustment, or ownership of an "auto." Jaber, Cinderella's employee, owned the trailer in question; Raniero, who was not employed by Cinderella, owned and drove the truck. Neither Jaber nor Raniero was an "insured" as defined by the policy. The exclusion, therefore, does not apply to Raniero's and Jaber's ownership, use and operation of their vehicles.
 
 
 37
 (Plaintiffs'Brief at 13-14) (citation omitted). According to the plaintiffs, while the boilerplate provisions of the policy include employees and agents within the definition of "insured," "Northfield and Cinderella bargained to change that definition to exclude employees and agents by special endorsement." (Plaintiffs' Reply Brief at 4.) In making this argument, the plaintiffs draw our attention to an endorsement to the insurance policy, which states: "Part 2.a of WHO IS AN INSURED (Section II) does not apply." (App. 59.) Part 2.a of Section IIis a provision that defines "insured" to include "your employees." (App. 227.)
 
 
 38
 The district court rejected this argument because it believed it was incongruous for the plaintiffs to seek coverage from Northfield for a judgment against Cinderella arising from the acts of Cinderella's employees and agents, while contending that those same employees and agents were not "insureds" under the policy.
 
 The plaintiffs counter:
 
 39
 The District Court confused the principles of interpreting insurance policies and the principles of respondeat superior. Cinderella's responsibility for the accident had already been determined. Either Cinderella or Northfield could have contended that Cinderella was not liable to the Barges for the accident under principles of respondeat superior, but neither Cinderella nor Northfield chose to defend that issue. Both Northfield and Cinderella are bound by the resulting judgment.
 
 
 40
 The applicability of the exclusion, however, is a totally separate issue from Cinderella's liability. The Northfield policy expressly insures Cinderella for its liabilityarising from the acts of its employees and agents even though it does not insure the employees or agents themselves. The only question, therefore, was whether Northfield properly denied that coverage based on the "auto" exclusion. The District Court, therefore, should have focused on the language of the exclusion, not on principles of respondeat superior or corporate responsibility.
 
 
 41
 (Plaintiffs' Brief at 14-15) (citation omitted).
 
 
 42
 We agree with the district court. If the plaintiffs' interpretation of the insurance policy were accepted, the exclusion of Cinderella's employees from the definition of "insureds" would render the policy meaningless. As the district court observed, "a corporation is an artificial entity that can only act through its agents." Barge, 831 F.Supp. at 601. If Northfield did not provide coverage for damages stemming from the actions of Cinderella's employees because they were not "insureds," then Northfield could never have been liable to Cinderella under the policy. We read the policy as excluding Cinderella's employees from the definition of "insureds" to the extent that Northfield would not be liable for damages assessed against them in their personal capacity. Under this reading, the "auto exception" applies to Cinderella's employees when they are acting for and on behalf of Cinderella, as was the case here, and there is no merit to the plaintiffs' contention.
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 Northfield also argues that the district court erred in finding that it was not bound by the decision of the Kentucky state court. Because of our ultimate holding, we need not address the merits of this contention
 
 
 [2]
 The case providing the greatest support for the plaintiffs' position is Gonzales v. St. Paul Mercury Insurance Co., 60 Cal.App.3d 675 (Cal.Ct.App.1976). In Gonzales, the court held that a homeowner's liability policy with an "auto exclusion" clause provided coverage for an accident arising out of the insured's negligent repair of his brakes. This case, however, was criticized in a series of subsequent California cases. See, e.g., Gurrola v. Great Southwest Ins. Co., 17 Cal.App.4th 65 (Cal.Ct.App.1993); Allstate Ins. Co. v. Jones, 139 Cal.App.3d 271 (Cal.Ct.App.1983); Camara, 63 Cal.App.3d 48. We agree with the reasoning of these latter cases, and join them in disapproving of Gonzales