On Application for Rehearing
The opinion of March 25, 1994, is withdrawn and the following opinion is substituted therefor.
The insured brought this declaratory judgment action to determine whether the insurer has a duty to defend and indemnify the insured with regard to two actions brought against the insured by its customers alleging intentional fraudulent misrepresentation, fraudulent suppression of material facts, reckless misrepresentation, and breach of an express warranty in connection with the sale of a used motor vehicle.
The issue is whether the trial court properly interpreted the insurance policy. The insured, Townsend Ford, Inc., appeals from the trial court's ruling that the policy excluded coverage for the claims that its salespeople committed intentional fraudulent misrepresentation. The insurer, Auto-Owners Insurance Company, cross appeals from the trial court's ruling that the policy covered the claims alleging suppression of a material fact, reckless misrepresentation, and breach of an express warranty.
The plaintiffs in the two underlying actions had purchased "program" cars from Townsend Ford. Program cars are cars that Ford Motor Company sells to rental car agencies with an obligation to buy them back. After *Page 362 
it buys back the cars, Ford sells them to franchise dealers for resale. The customers allege that salespeople employed by Townsend Ford represented either that these program cars had been driven only by Ford managers under the constant ownership of Ford Motor Company and were being sold as "demonstrators" or that the salespeople failed to disclose that these cars had been used previously as rental cars. Townsend Ford brought this declaratory judgment action to establish that its insurer, Auto-Owners, was obligated under its policy to cover and defend claims of intentional fraud, fraudulent suppression, and breach of warranty.
The "intentional act exclusion" provision of the policy reads as follows:
"2. Exclusions.
"This insurance does not apply to:
 "a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured."
The trial court reasoned that this provision excluded coverage of the claims of intentional fraud filed against Townsend Ford.
Townsend Ford contends that the trial court did not correctly apply the "Separation of Insureds" provision of the policy, which reads:
"7. Separation of Insureds.
 "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
 "a. As if each Named Insured were the only Named Insured; and
 "b. Separately to each insured against whom claim is made or 'suit' is brought."
The trial court held that while this policy provision requires an individualized analysis of the separate personal intent of each insured named as a defendant, because Townsend Ford is a corporation rather than a natural person its intent is deemed to have been the same as that of its salesperson. The trial court stated:
 "The Alabama Supreme Court has declared in a number of fraud cases that a culpable intent by any of the corporate agents involved in a transaction amounts to corporate fraud, regardless of the fact that other corporate agents, participating in the transaction or otherwise, had no such fraudulent intent.
 " 'It is axiomatic that a corporate employee's individual defense of lack of intent does not of itself end the inquiry with respect to the corporation's requisite intent to defraud. The corporation is acting as a legal entity and, if an individual corporate agent's conduct, though not fraudulent of itself, combines with the conduct of other corporate agents so as to amount to corporate fraud, the corporation may not escape liability simply by pointing to one innocent link in the chain.'
 "Leisure American Resorts, Inc. v. Knutilla, 547 So.2d 424, 426 ([Ala.] 1989) (emphasis in original).
 "The Alabama Supreme Court has 'repeatedly held that a corporation cannot escape liability in fraud cases by showing that the agent through whom it acted was without knowledge of the true facts. The issue in those cases is whether the corporation had knowledge of the true facts.' Shelter Modular Corp. v. Cardinal Enterprises, Inc., 347 So.2d 1334, 1338 (Ala. 1977).
 "Just because 'the corporation's left hand did not know what its right hand was doing,' the corporation is nonetheless liable because of the principles of traditional agency law. Leisure American, 547 So.2d at 427, quoting and referencing in particular Bolton Ford of Mobile, Inc. v. Little, 344 So.2d 1208 (Ala. 1977)."
This Court said in Tapscott v. Allstate Ins. Co.,526 So.2d 570, 574 (Ala. 1988):
 "[W]hen a complaint alleges an intentional tort, the approach taken by this Court in Ladner [ Co. v. Southern Guaranty Ins. Co., 347 So.2d 100 (Ala. 1977)] — looking to the allegations in the complaint, as well as available admissible evidence to determine the insurer's responsibility to defend and indemnify pursuant to the contract — is the best method of determining the responsibility *Page 363 
of an insurer to defend and indemnify."
The complaints in the underlying actions allege that the plaintiffs suffered damages as a proximate consequence of intentional acts of fraud by Townsend Ford's agents. UnderLadner and Tapscott, there is no duty under the insurance policy to defend the allegations of intentional fraud.
Townsend Ford contends that under Lawler Machine FoundryCo. v. Pacific Indemnity Ins. Co., 383 So.2d 156 (Ala. 1980), a corporation is not charged with the intent of its employee in regard to an insurance policy with an "intentional acts exclusion." In Lawler, the employee and stockholder of a corporation intentionally drove his truck through the wall of a restaurant. This Court held that the employee was not covered, but that the corporation was entitled to coverage. Id. at 158. However, unlike the employees in this case, the employee inLawler "was not . . . performing any business as agent for that corporation." Id. at 157. In regard to the acts alleged in the actions against Townsend Ford, its salespeople clearly were performing business on behalf of Townsend Ford as its agents.
A corporation is a legal entity, an artificial person, and can only act through agents. See Warwick Development Co. v. GVCorp., 469 So.2d 1270, 1276 (Ala. 1985) ("A corporation can act only through its officers and agents."); Home Indemnity Co. v.Anders, 459 So.2d 836, 840 (Ala. 1984) ("A corporation can act only through its servants, agents, or employees."). Inasmuch as Townsend Ford's salespeople were acting as agents on behalf of the corporation and its business operations, their intent is the intent of the corporation. While an insurer's duty to defend liability actions is more extensive than its duty to pay, Ladner Co. v. Southern Guaranty Ins. Co., 347 So.2d 100,102 (Ala. 1977), we conclude that the trial court correctly held that Auto-Owners was not obligated under the policy to defend claims against Townsend Ford alleging intentional fraud committed by its agents in the course of its business.
Auto-Owners cross appeals from the trial court's ruling that the policy provided coverage for the claims alleging fraudulent suppression of a material fact, breach of warranty, and reckless misrepresentation. The trial court held that "[t]he tort of fraudulent suppression is not necessarily an 'intentional' tort." Auto-Owners argues that under Crowder v.Memory Hill Gardens, Inc., 516 So.2d 602 (Ala. 1987), suppression of a material fact is an intentional tort and, therefore, comes within the "intentional acts" exclusion, along with the claim of intentional fraudulent misrepresentations. We disagree and affirm the holding of the trial court on this claim with regard to the duty of Auto-Owners to defend.
The cause of action for suppression of a material fact is found in § 6-5-102, Ala. Code 1975. That section states, "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." InBaker v. Bennett, 603 So.2d 928, 934-35 (Ala. 1992), we said:
 "To prove suppression of a material fact, a plaintiff must establish (1) that the defendant had a duty to disclose that fact, (2) that the defendant concealed or failed to disclose that fact, (3) that the concealment or failure to disclose induced the plaintiff to act, and (4) that the action caused injury to the plaintiff. Ala. Code 1975, § 6-5-102. See, also, Gary v. Kirkland, 514 So.2d 970 (Ala. 1987). Section 6-5-102 does not require proof of an intent to deceive; rather, a breach of the defendant's duty to disclose the suppressed facts is sufficient to trigger liability. Burlington Northern R.R. v. Warren, 574 So.2d 758 (Ala. 1990). Under § 6-5-102, a duty to disclose arises either from a confidential relationship between the parties or from the particular facts and circumstances of the case. The question of the existence of a duty to communicate under § 6-5-102 is for the jury, which should consider the relationship of the parties, the value of the particular facts suppressed, and the relative knowledge of each party."
Stone v. Gulf American Fire Casualty Co., 554 So.2d 346, 360
(Ala. 1989), likewise holds *Page 364 
that whether the defendants intended to deceive was immaterial to their liability under § 6-5-102, Ala. Code 1975. Thus, suppression of a material fact is not necessarily an intentional tort, although if shown to have been committed intentionally it can come within an "intentional acts" exclusion. Under the facts of this case, we hold that the trial court correctly held that Auto-Owners had an obligation under the policy to defend the claims alleging suppression of a material fact. However, it is premature to address the issue whether Auto-Owners would have a duty to indemnify.
Regarding the breach of warranty claims, Auto-Owners contends that the policy contains a "contractual exclusion" that excludes damages for which the insured is obligated to pay because of its "assumption of liability in a contract or agreement." This policy provision states:
"2. Exclusions.
"This insurance does not apply to:
". . . .
 "b. 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
 "(1) Assumed in a contract or agreement that is an 'insured contract',[1] provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement; or
 "(2) That the insured would have in the absence of the contract or agreement."
The trial court stated that this type of provision "traditionally serve[s] to exclude 'indemnity' types of liability, whereby the liability itself was assumed," and held that it did not apply to warranty situations. The trial court stated that the warranty pleaded in the underlying complaint "does not involve the 'assumption of liability' but rather merely a representation." Auto-Owners argues that the trial court held the exact opposite of what the policy exclusion meant. Auto-Owners contends that the policy does not exclude coverage of indemnity contracts for tort liability but does exclude coverage of liability for breach of warranty or breach of contract.
We agree with the trial court that the policy does not require Auto-Owners to defend claims involving indemnity contract liability but that the policy does require Auto-Owners to defend claims alleging breach of an express warranty. The "contractual exclusion" excludes all liability for damages the insured might be obligated to pay "by reason of the assumption of liability in a contract or agreement" unless it is under one of the specific types of contracts that are included in the definition of "insured contract."[2] An express warranty is not included in the definition of "insured contract" under the policy. The trial court correctly noted that this type of provision "traditionally serve[s] to exclude 'indemnity' types of liability, whereby the liability itself was assumed, rather than warranty situations." The specific express warranty alleged to have been breached is that "[Townsend Ford] warrant[ed] that said automobile had in fact only been driven by a Ford manager" and the plaintiff alleged that "[Townsend Ford] breached said warranty by failing to deliver a conforming automobile." This warranty does not involve "the assumption of liability," but rather merely a representation. Insurers can plainly provide *Page 365 
in their policies that coverage for breach of warranty claims is excluded if they so choose.
Auto-Owners also contends that the trial court erred in failing to hold that Auto-Owners had no obligation to indemnify or defend Townsend Ford for any claims under the "automobile exclusion" in the policy. The "automobile exclusion" states:
"2. Exclusions.
"This insurance does not apply to:
". . . .
 "g. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading'."
The trial court rejected this argument by merely citingGuaranty National Ins. Co. v. Marshall County Board ofEducation, 540 So.2d 745 (Ala. 1989). Guaranty National says that "where ambiguity exists in the language of an exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording." Id. at 748. Auto-Owners sold the insurance policy with the knowledge that Townsend Ford was in the business of selling automobiles. To apply the "automobile exclusion" as Auto-Owners argues would be to exclude coverage of almost everything. It is not reasonable to interpret this provision to apply to the sale of inventory, which for Townsend Ford happens to be automobiles. Consequently, the trial court correctly rejected Auto-Owners' argument regarding the "automobile exclusion."
In sum, we hold that the trial court's judgment in this case regarding Auto-Owners' duty to defend was correct. Auto-Owners does not have a duty to defend Townsend Ford on the claims of intentional fraud, but Auto-Owners is required under the policy to defend Townsend Ford on the fraudulent suppression, reckless misrepresentation, and breach of warranty claims. See Tapscottv. Allstate Ins. Co., 526 So.2d 570, 574 (Ala. 1988) ("if a complaint alleges both intentional and unintentional acts, then the insurer would probably be required to defend and indemnify on the claims for unintentional acts").
Finally, we note, as we did in Tapscott, that an insurance company runs the risk of not representing its interests throughout the lawsuit when the policy has an exclusion for damages expected or intended by the insured and the insurer decides not to defend the allegations of intentional torts. An insurance company can avoid this risk by defending the insured regardless of the allegations but reserving the right to withdraw and not indemnify if the judgment is for a bodily injury or property damage expected or intended from the standpoint of the insured. An insurance company using this approach should, however, make its position clear to the insured. Tapscott, 526 So.2d at 574-75.
Based on the foregoing, we affirm the trial court's judgment on all of the claims.
APPLICATION DENIED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED BOTH AS TO CASE 1921111 AND AS TO CASE 1921299.
HORNSBY, C.J., and SHORES, HOUSTON, INGRAM and COOK, JJ., concur.
[1] The policy defines "insured contract" as follows:
"6. 'Insured contract' means:
"a. A lease of premises;
"b. A sidetrack agreement;
 "c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
 "d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
"e. An elevator maintenance agreement;
 "f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."
[2] See note 1.