**MICHAEL CARBONE, INC., Plaintiff,**

v.

**GENERAL ACCIDENT INSURANCE CO. and Keith Edward Wilson, Defendants.**

**Civil Action No. 96–1442.**

United States District Court,
E.D. Pennsylvania.

Aug. 9, 1996.

---

David T. Lewis, Archer and Greiner, Philadelphia, PA, for Plaintiff.

Jacques Mann, Law Offices of Ralph L. Herbst, III, Philadelphia, PA, for General Accident Insurance Company.

Justine Gudenas, Philadelphia, PA, for Keith Edward Wilson.

### MEMORANDUM & ORDER

VanARTSDALEN, Senior District Judge.

The plaintiff, Michael Carbone, Inc. ("Carbone") seeks a declaratory judgment requiring defendant General Accident Insurance Co. ("General Accident") to defend and indemnify it pursuant to a Commercial General Liability ("CGL") policy written by General Accident. The loss at issue arose on September 28, 1993 when Keith Edward Wilson's car was rear-ended by an automobile driven by Dennis Sebelist, a Carbone employee traveling to a customer service call on behalf of his employer. In a related civil matter, Wilson sued both Sebelist and Carbone. *See Wilson v. Sebelist,* No. 95–5462 (E.D.Pa.1995) (unreported case). This underlying action has been settled through a two-tiered settlement in which the amount of plaintiff's recovery is contingent upon whether the defendants are covered by the Carbone CGL policy.

In this action, both Carbone and General Accident have moved for summary judgment. General Accident argues that it has no duty to defend or indemnify Carbone because the CGL policy at issue contained an exclusion for losses arising out of the ownership, maintenance, or use an automobile. Carbone, in contrast, seizes upon a "separation of insureds" clause in the CGL policy, which it argues makes the automobile exclusion inapposite. After carefully considering the briefs filed by both parties and the oral argument on the cross-motions for summary judgment,

I have concluded that the automobile exclusion does apply and that General Accident is not required to defend or indemnify Carbone. Therefore, General Accident's motion for summary judgment will be granted and Carbone's will be denied.

### I. Undisputed Facts

Although the parties desire very different outcomes in this action, they agree on all of the pertinent facts. Carbone concedes that Sebelist was acting in the scope of his employment when he was involved in the collision with Wilson's car. The parties agree that Sebelist owned and insured the car he was driving at the time of the accident; it was not owned by Carbone.

Furthermore, the parties agree that the CGL policy contained an automobile exclusion and a separation of insureds clause, although they disagree vehemently on the proper interpretation of those provisions. The CGL policy obligated General Accident to defend and indemnify Carbone and the other "insureds" for a wide variety of losses. Since Carbone is a corporation, Section II.1.c. of the policy provides the relevant definition of "insureds":

> If you are designated in the Declarations as:
>
> . . . .
>
> c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

A subsequent provision, Section II.2.a., extends the definition of "insured":

> Each of the following is also an insured:
>
> a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

The policy also contains an "automobile exclusion," the relevant portion of which states:

> This insurance does not apply to:
>
> . . . .

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "Auto" or watercraft owned or operated by or rented or loaned to any insured.

Finally, the CGL policy includes a "Separation of Insureds" clause which states, in toto:

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Form to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## II. Summary Judgment Standard

 Both sides have moved for summary judgment. A motion for summary judgment is appropriate only when there is no genuine issue of material fact, and one party is entitled to judgment as a matter of law. *Williams v. Borough of West Chester,* 891 F.2d 458, 463–64 (3d Cir.1989). In a motion for summary judgment, the court may examine evidence beyond the pleadings. The court must always consider the evidence, and the inferences from it, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.,* 793 F.2d 509, 511 (3d Cir.1986). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## III. Legal Analysis

Given that there are no disputes as to any material fact, this case is particularly eligible for resolution by summary judgment. The determination of which party's motion should be granted turns on the interpretation of the CGL policy. General Accident claims that the automobile exclusion bars coverage. General Accident notes that the loss at issue was caused by Sebelist's operation of an automobile while Sebelist was acting within the scope of his employment. Furthermore, since Sebelist was acting on behalf of Carbone, his employer, General Accident argues that Sebelist's acts must be imputed to Carbone under ordinary agency law doctrines. Therefore, General Accident contends that the loss arose out of use or operation of an automobile by an insured (i.e. Carbone Inc.), and thus, the automobile exclusion applies to bar coverage.

### A. The Separation of Insureds Clause and the Auto Exclusion

 Carbone concedes that the automobile exclusion plays some role in the present analysis. However, Carbone argues that the exclusion must be read in light of the separation of insureds clause. Essentially, this requires that the automobile exclusion must be applied to each insured separately. In particular, Carbone believes that when the automobile exclusion is read to determine how it applies to Carbone it reads as follows:

This insurance does not apply to:

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "Auto" or watercraft owned or operated by or rented or loaned to *Carbone Inc.*

In short, Carbone thinks that the phrase "any insured" must be replaced by each insured individually when determining the scope of the exclusion. In essence, Carbone views "any insured" to be synonymous with "the insured." Similarly, when read to determine how it applies to Sebelist as an employee, Carbone contends that the policy reads:

This insurance does not apply to:

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "Auto" or watercraft owned or operated by or rented or loaned to *an employee of Carbone Inc.*

Carbone argues that these two readings of the automobile exclusion should be applied to determine which insureds were covered for the loss caused by the car accident. First, Carbone concedes that the exclusion clearly bars coverage for Sebelist. The loss caused by the accident arose out of use of an auto operated by Sebelist, an employee of Carbone Inc. Carbone argues that this is irrelevant, however, in deciding whether Carbone is covered. Carbone argues that the car was used or operated by one of its employees, who is a separate insured, and not by the company itself. Under Carbone's logic, the loss did not arise out of the use or operation of an automobile by Carbone, and therefore the automobile exclusion is inapposite, and General Accident must indemnify and defend Carbone Inc. pursuant to the CGL policy.

■ Before examining which party has the better argument, I should note that New Jersey law governs this action. A federal court sitting in a diversity case must apply the choice of law rules of the forum state. *Klaxon Co. v. Stenton Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Since Pennsylvania is the forum state, its choice of law rules control. Pennsylvania follows the "significant contacts" rule and applies the law of the state with the most important contacts to the action. *Nationwide Mut. Ins. Co. v. Walter*, 290 Pa.Super. 129, 434 A.2d 164 (1981); *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964). In interpreting an insurance contract, the most significant contacts are the place the contract was formed and the insured's domicile. The Carbone CGL contract at issue here was formed in New Jersey and insures a New Jersey corporation. Thus, its interpretation is governed by New Jersey law, even though Sebelist's accident occurred in Pennsylvania. *See Licenziato v. United States*, 889 F.Supp. 162 (D.N.J.1995) (applying New Jersey law to case involving an auto insurance contract issued in New Jersey even though the accident occurred elsewhere). Therefore, I will examine New Jersey law to determine which party's reading of the policy is correct. Unfortunately, New Jersey courts have not addressed the exact issue presented here (i.e. the interpretation of an exclusion using the phrase "any insured" in light of a severability

provision), so I will also examine holdings from other courts which the Supreme Court of New Jersey would likely consider if it had to decide this matter.

■ Under New Jersey law, insurance contracts are subject to special rules of interpretation which generally favor the insured. *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 582 A.2d 1257, 1260 (1990). This is because the contracts are almost always written by insurance companies, which are inevitably better informed about the terms of the policies than the layman insured. *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 503 A.2d 862, 869 (1986). Although unambiguous insurance contracts will be enforced according to their clear terms, any ambiguities regarding the extent of coverage must be resolved in favor of the insured. *Suh v. Dennis*, 260 N.J.Super. 26, 614 A.2d 1367 (1992); *Great American Ins. Co. v. Lerman Motors Inc.*, 200 N.J.Super. 319, 491 A.2d 729 (1984).

Although Carbone's arguments seem to require a tortured reading of the policy, there is some precedent for its approach. Cases exist in which courts have read separation of insureds clauses and exclusions very literally to reach results which might seem contrary to the language of exclusion standing alone. In a related set of cases, courts have applied the "doctrine of severability," which holds that each exclusion must be applied to each insured separately, to reach similar results. In essence, under the doctrine of severability courts assume that the parties intended a policy to contain a separation of insureds clause, even if the actual clause is not present. As will be explained below, this makes sense in some instances, particularly in cases involving employee exclusions. Although the present situation is very different from the facts of the cases using severability to modify the meaning of policy exclusions, examining such cases provides some insight into why the separation of insureds clause does not vitiate the automobile exclusion here.

There are two relevant New Jersey cases. In *Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co.*, 28 N.J. 17, 145 A.2d 15 (1958), the Supreme Court of New Jersey had to interpret an

insurance policy which included an "employee exclusion." That exclusion stated that:

> This policy does not apply ... to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment ... of the insured ... [or] to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law.

145 A.2d at 16. In the underlying case, Kelly, an employee of a trucking company which was the named insured under an automobile policy, had sued Cherry, an additional insured. In *Maryland Casualty*, Cherry's insurance company sued the trucking company's insurer for indemnification. Cherry's insurer argued that the employee exclusion in the trucking company's policy did not preclude coverage since it only excepted injuries to employees of "the insured." To determine whether Cherry was excepted by the exclusion, Cherry's insurer argued, the exclusion had to be read as if Cherry were "the insured." The court agreed and applied the doctrine of severability. The court inserted Cherry's name where the exclusion read "the insured" and determined that the employee exclusion did not apply because Kelly was not Cherry's employee. 145 A.2d at 16–17.

In reaching this conclusion, the Supreme Court of New Jersey noted that the defendant insurance company wanted to construe the phrase "the insured" in the employee exclusion to mean "any insured" or "the named insured." The court refused to read the phrase so broadly. 145 A.2d at 16. Significantly, the court's opinion suggests that had the phrase been worded "any insured," the court would have interpreted the employee exclusion to preclude coverage of any person employed by any insured, whether named in the policy or included as an additional insured under the omnibus provision. This is relevant since the exclusion in the Carbone CGL policy is phrased in terms of "any insured" rather than "the insured." This will be discussed in detail below.

*Erdo v. Torcon Construction Co.*, 275 N.J.Super. 117, 645 A.2d 806 (1994), is the second relevant New Jersey case. The facts are similar to *Maryland Casualty*. In *Erdo*,

a subcontractor's employee injured at a construction site sued the general contractor. The general contractor's insurer refused to indemnify the general contractor, citing an employee exclusion in the policy which stated:

> [The policy shall not apply] to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured....

645 A.2d at 119. Following *Maryland Casualty*, the court applied the doctrine of severability and held that the exclusion was inapplicable because the plaintiff-employee worked for a subcontractor, not the general contractor. In a suit against the general contractor, the court reasoned, the general contractor was "the insured" for purposes of the exclusion. Since the plaintiff was not an employee of the general contractor, the exclusion did not apply.

In short, *Erdo* reveals that *Maryland Casualty*, a case decided in 1958, is still good law. In fact, the vast majority of jurisdictions which have addressed the issue are congruent with *Maryland Casualty* and hold that the severability doctrine or a separation of insureds clause modifies the meaning of an exclusion phrased in terms of "the insured." *See, e.g., Float–Away Door Co. v. Continental Casualty Co.*, 372 F.2d 701 (5th Cir.), *cert. denied*, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967); *Phoenix Assur. Co. v. Hartford Ins. Co.*, 29 Colo.App. 548, 488 P.2d 206 (1971); *Shelby Mut. Ins. Co. v. Schuitema*, 183 So.2d 571 (Fla.Dist.Ct.App.1966), *aff'd per curiam*, 193 So.2d 435 (Fla.1967); *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Bierman*, 266 Md. 420, 292 A.2d 674 (1972); *American Nat'l Fire Ins. Co. v. Estate of Fournelle*, 472 N.W.2d 292 (Minn.1991); *Travelers Ins. Co. v. Auto–Owners Ins. Co.*, 1 Ohio App.2d 65, 203 N.E.2d 846 (1964); *Commercial Standard Ins. Co. v. American General Ins. Co.*, 455 S.W.2d 714 (Tex.1970); *Bankers & Shippers Ins. Co. v. United States Fire Ins. Co.*, 216 Va. 807, 224 S.E.2d 312 (1976). These cases hold that the exclusion will only be effective if it applies with respect to the specific insured seeking coverage.

This interpretation makes perfect sense in light of the rationale underlying the separation of insureds clause. In a concurring opinion in *Alaska Department of Transportation and Public Facilities v. Houston Casualty Co.*, 797 P.2d 1200 (Alaska 1990), Chief Justice Matthews of the Supreme Court of Alaska discusses the history and purpose of the separation of insureds clause. Apparently, insurance companies intended the term "the insured" as used in an exclusion to apply only to the insured seeking coverage. 797 P.2d at 1205. Chief Justice Matthews quotes an article by two insurance executives which stated:

> The punchline is this: the term "the insured" means, and means only, the person claiming coverage, or (to put it another way) only the person coverage for whom is the issue.

797 P.2d at 1205 (quoting N. Risjord & J. Austin, "Who is 'The Insured' Revisited," 28 Ins.Couns.J. 100). Matthews then explains that the severability of interests clause (another name for a separation of insureds clause) became part of the standard insurance. industry form contract in 1955. The clause, Matthews says, was aimed at clarifying "what insurance companies had intended all along, namely that the term 'the insured' in an exclusion refers merely to the insured claiming coverage." 797 P.2d at 1205. He then quotes Risjord and Austin at length:

> From a date at least no later than 1940, it was clearly understood by the insurance companies participating in the standard provisions program that, as stated above, "the insured" meant only the person claiming coverage, and that the employee exclusion denied coverage to any insured only with respect to injury to his employee. By 1954, a majority of the reported decisions was to the contrary. Ironically, this is the only known situation where many of the courts persist[ed] in erring in favor of the insurance companies!

> As a result, in 1954, the present writers, in "Who is 'The Insured'" asserted that "the insured" was only the person claiming coverage. The 1955 revisions of the standard provisions promulgated by the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau carried a new condition labeled "Severability of Interests," intended to express the purpose formerly implied and to avoid further erroneous decisions on the subject.

797 P.2d at 1205–06 (quoting N. Risjord & J. Austin, "Who is 'The Insured' Revisited," 28 Ins.Couns.J. 100, 101 (footnote omitted)). *See also, Liberty Mutual Ins. Co. v. Iowa Nat'l Mutual Ins. Co.*, 186 Neb. 115, 181 N.W.2d 247 (1970) (reviewing the same history and citing additional sources); *Phoenix Assurance Co. v. Hartford Ins. Co.*, 29 Colo. App. 548, 488 P.2d 206 (1971) (same).

In cases involving employee exclusions, this interpretation of separation of insureds clauses is logical because it avoids duplication with workers .compensation schemes. Consider, for example, the facts of *Erdo*, in which a subcontractor's employee sued the general contractor. In that case, the New Jersey Superior Court held that the employee exclusion was inapplicable to situations where there was no employer-employee relationship between the person bringing suit and the party seeking coverage. Therefore, the employee exclusion did not apply when an employee of the subcontractor sued the general contractor. If, in contrast, an employee of the general contractor had sued the general contractor, the employee exclusion would have applied, and the CGL insurer would not have had to indemnify the general contractor. This makes sense because the employee's claim would be covered by a typical workers compensation scheme, which provides an exclusive remedy in a suit against an employer. The suit by the employee of the subcontractor, however, falls outside of the workers compensation system. Firms need to protect themselves from such liabilities, which is one of the reasons they purchase commercial general liability policies. *Cf. Float–Away Door Co. v. Continental Casualty Co.*, 372 F.2d 701, 708 (5th Cir.), *cert. denied*, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967), (stating that "the primary objective of [employee exclusions] is to avoid duplication of coverage with respect to compensation insurance"); *Phoenix Assurance Co.*, 488 P.2d at 208. This insight is significant since the bulk of the cases which elaborate on the impact of severability clauses on ex-

clusions do so in the context of employee exclusions contained in either automobile or commercial general liability policies.

Taken together, *Erdo, Maryland Casualty*, and other similar cases stand for three propositions. First, a separation of insureds clause may alter the meaning of exclusions contained within a policy. Second, the impact of the clause depends upon a pedantic reading of the exact wording of the exclusion as applied to each separate insured. *See*, *e.g., American Nat'l Fire Ins. Co. v. Estate of Fournelle*, 472 N.W.2d 292 (Minn.1991) (pedantic reading of exclusion of household residents from home insurance policy in light of severability clause); *Travelers Ins. Co. v. Auto–Owners Ins. Co.*, 203 N.E.2d 846 (Ohio Ct.App.1964) (applying separability of insureds doctrine to nullify effect of employee exclusion where employee of named insured sought coverage). And third, in determining the scope of an exclusion courts may look at how the policy at issue interacts with other available forms of insurance.

Undertaking a pedantic reading of the automobile exclusion contained in the Carbone CGL policy reveals that it is not altered or otherwise limited by the separation of insureds clause. This is because the exclusion excepts losses "arising out of the ownership, maintenance, use or entrustment to others of any ... 'Auto' ... owned or operated by or rented or loaned to *any insured*." (underlining added). Note the exact language. The provision excludes losses caused by an automobile operated by *"any insured"*; the clause does not say *"the insured."* The distinction is paramount. Had the automobile exclusion used the phrase "the insured," the separation of insureds clause would have altered the meaning of the exclusion, as in *Maryland Casualty, Erdo*, and the other cases cited above. Had the automobile exclusion been phrased in terms of automobiles owned or operated by "the insured," in light of the separation of insureds clause in a suit against Carbone the exclusion would read:

This insurance does not apply to:

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "Auto" or watercraft owned

or operated by or rented or loaned to *Carbone Inc.*

Since the car was owned and operated by Sebelist, an employee and separate insured, rather than Carbone Inc., Carbone could then argue that the exclusion would not apply when determining whether Carbone has coverage.

The wording of the exclusion, however, does not except losses arising out of the use of an automobile owned or operated by "the insured"; it excludes losses from the use of an automobile owned or operated by "any insured." Therefore, Carbone's interpretation of the clause is unwarranted. Reading the policy very literally as demanded by the caselaw, the automobile exclusion reads as follows:

This insurance does not apply to:

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "Auto" or watercraft owned or operated by or rented or loaned to *Carbone Inc., Sebelist, any other employee, or any other insured.*

Therefore, since the loss at issue indisputably arose out of the use of an automobile owned and operated by Sebelist, an insured, the exclusion applies, and Carbone is not covered.

This conclusion is supported by the majority of cases which have interpreted the interaction of separation of insureds clauses with policy exclusions phrased in terms of "any insured." Although less numerous than the cases involving exclusions worded "the insured," there are several cases on point.

In *Oaks v. Dupuy*, 653 So.2d 165 (La.Ct. App.1995), the Louisiana court of appeal had to interpret an automobile exclusion very similar to the one contained in the Carbone CGL policy in light of a separation of insureds clause. The exclusion excepted losses arising out of the use of

(1) any automobile ... owned or operated by or rented or loaned to any insured, or
(2) any other automobile ... operated by

any person in the course of his employment by any insured.

The separation of insureds clause stated:

> The insurance afforded applies separately to each insured against whom claim is made or suit is brought.

The insured, Mimosa Garden Service Corporation ("Mimosa"), sought coverage for an accident caused by one of its employees while driving a company-owned delivery van. The employee, Albert "Jay" Dupuy, was apparently intoxicated. His truck crossed the centerline and struck a vehicle driven by Paula Oaks. The head-on collision seriously injured Oaks and her infant son. When Oaks sued Jay Dupuy, Mimosa, and "Bud" Dupuy (Jay's father and apparently the owner/manager of Mimosa), the company's insurer refused to provide coverage under the CGL policy, citing the automobile exclusion. Both Mimosa and Bud were insureds under the CGL policy. The trial court sided with the insurer and held that the automobile exclusion precluded coverage.

On appeal Oaks argued the separation of insureds clause rendered the automobile exclusion ambiguous and therefore inapplicable. Oaks contended that it was not possible for both Bud and Mimosa to be "owners" of the vehicle, and, thus, if one of the insureds were considered the titleholder, the automobile exclusion should not apply to the other. The court expressly rejected this logic, however, noting that the automobile exclusion referred to vehicles owned by "any insured." 653 So.2d at 168. It characterized the plaintiffs' claim of ambiguity as depending upon a "tortured construction." Id. In short, the court held that the separation of insureds clause did not alter the scope of the automobile exclusion phrased in terms of "any insured."

In a 1990 case, the Supreme Court of Colorado reached the same conclusion in a suit over a homeowner's policy. In *Chacon v. American Family Mutual Insurance Co.*, 788 P.2d 748 (Colo.1990), the petitioners sought to overturn two lower court holdings in favor of the respondent insurance company. The loss at issue was caused by the Chacons' 10–year–old son, who had vandalized a school with another boy, inflicting more than $6,000 in damage. The school district's insurer reimbursed the school district and then filed suit against the Chacons pursuant to a state law which allows a school district to recover up to $3,500 for damages caused by a minor. The school district's insurer was awarded a default for $3,492.21, which the Chacons sought to have reimbursed under their homeowner's policy. American Family, the underwriter of the homeowner's policy, refused coverage citing an "intentional acts" exclusion contained within the policy:

> [Coverage does] not apply to bodily injury or property damage ... which is expected or intended by any insured.

788 P.2d at 750. The Chacons argued that the exclusion was ambiguous in light of the separation of insureds clause in the policy.

The Supreme Court of Colorado accepted the case to resolve this issue. 788 P.2d at 749. The majority opinion carefully noted the distinction between exclusions worded "the insured" and those phrased "any insured."

> The majority of courts which have considered this issue have held that "unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured."

788 P.2d at 751 (quoting *Sales v. State Farm Fire & Casualty Co.*, 849 F.2d 1383, 1385 (11th Cir.1988)). The majority then cited cases illustrating this point, including *McCauley Enterprises v. New Hampshire Insurance Co.*, 716 F.Supp. 718 (D.Conn. 1989), which involved a policy with both a severability clause and an exclusion phrased in terms of "any insured." The majority recognized that there were cases to the contrary, but found them unpersuasive since they rendered the word "any" superfluous. 788 P.2d at 751–52. Justice Erickson concurred in the result reached by the majority. He wrote separately "to emphasize that, despite the severability clause, the exclusion expresses a clear intent to preclude coverage for liability on the part of an insured for the intentional acts of the other individual insureds." 788 P.2d at 752 (citing *Spezialetti*

*v. Pacific Employers Ins. Co.,* 759 F.2d 1139, 1141–42 (3d Cir.1985) (distinguishing exclusions worded "the insured" from those phrased "any insured" under Pennsylvania law); *McCauley v. New Hampshire Ins. Co.,* 716 F.Supp. 718, 721 (D.Conn.1989)).

In addition to *Oaks* and *Chacon, American Family Mutual Insurance v. Moore,* 912 S.W.2d 531 (Mo.App.1995), provides a third illustration of the interaction of an exclusion worded "any insured" with a severability clause. In *Moore,* a homeowners' insurer brought a declaratory judgment action to determine its obligation to defend or indemnify its insureds. The loss at issue arose when Marsha Moore, a named insured, was performing babysitting services for hire in her home. A child she was babysitting was bitten by her family's dog. Mrs. Moore's husband and son (who owned the dog) were also insureds under the policy. The insurance company argued that a business pursuits exclusion in the policy precluded coverage. That clause stated that coverage did not apply to bodily injury or property damage "arising out of business pursuits of any insured." 912 S.W.2d at 533.

The plaintiff in the underlying action had sued three insureds: Mrs. Moore, her husband, and their son. The insureds argued that a severability clause in their homeowners' policy made the exclusion inapplicable to the claims brought against the husband and son because they were not engaged in a business pursuit. At a minimum, they contended that the severability clause made the exclusion ambiguous. The court disagreed. It noted that in a prior case the Missouri Supreme Court had suggested that exclusions worded "the insured" should be interpreted differently than those termed "any insured" in the presence of a severability clause. 912 S.W.2d at 534 (citing *Shelter Mut. Ins. Co. v. Brooks,* 693 S.W.2d 810 (Mo.1985)). Therefore, the *Moore* court determined that:

[T]he policy before us unambiguously expresses an intention to deny coverage to all insureds when damage is the result of a business pursuit. The purpose of the severability clause is not to negate the plainly

worded meaning of the business exclusion clause.

912 S.W.2d at 534–35. The court recognized that there were two cases from other jurisdictions to the contrary, but it found those cases unpersuasive since they ignored the clear meaning of the word "any." 912 S.W.2d at 534 (citing *Premier Ins. Co. v. Adams,* 632 So.2d 1054 (Fla.Dist.Ct.App. 1994) and *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986)). Instead, the court followed the rule established by *Chacon.* 912 S.W.2d at 534 (citing *Thoele v. Aetna Casualty & Surety,* 39 F.3d 724, 727 (7th Cir.1994) and *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748 (Colo.1990)).

In short, the bulk of the courts which have addressed the issue have held that an exclusion worded "any insured" unambiguously expresses a contractual intent to create joint obligations and preclude coverage to innocent co-insureds. *See, e.g., Sales v. State Farm Fire & Casualty Co.,* 849 F.2d 1383 (11th Cir.1988); *McCauley Enterprises v. New Hampshire Ins. Co.,* 716 F.Supp. 718 (D.Conn.1989); *Travelers Ins. Co. v. Blanchard,* 431 So.2d 913 (La.Ct.App.1983); *State Farm Fire & Casualty Co. v. Wolford,* 116 A.D.2d 1011, 498 N.Y.S.2d 631 (1986). There are, however, cases to the contrary. *See Transport Indemnity Co. v. Wyatt,* 417 So.2d 568 (Ala.1982); *Premier Ins. Co. v. Adams,* 632 So.2d 1054 (Fla.Dist.Ct.App.1994); *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986). I believe that the majority view is better reasoned.

Some of the cases following the minority approach did so because they believed that the majority view rendered the severability clause meaningless. *See Marnell,* 496 N.E.2d 158, 161. That is not the case with the Carbone CGL policy. Although the automobile exclusion is phrased in terms of "any insured," and thus is unaltered by the separation of insureds clause under the majority view, several of the other exclusions are worded in terms of "the insured." For example, the intentional act exclusion states that the policy does not cover losses "expected or intended from the standpoint of the insured." Similarly, the employee exclusion

precludes coverage for injuries an employee of "the insured." Thus, the separation of insureds would act to modify these two exclusions and is not meaningless. Following the majority rule in this case therefore gives meaning to both the word "any" in the automobile exclusion and the separation of insureds clause. This adheres to the Third Circuit's dictate that a court interpreting an insurance policy "should read policy provisions to avoid ambiguities if possible and should not torture the language to create them." *Spezialetti v. Pacific Employers Ins. Co.,* 759 F.2d 1139, 1142 (3d Cir.1985) (citing *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.,* 655 F.2d 521, 524 (3d Cir.1981)).

### B. The Agency Law Issue

Since I have adopted the majority view, which holds that an exclusion phrased "any insured" is not affected by a separation of insureds clause, the exclusion applies and Carbone is not covered for the loss caused by Sebelist's accident. Even if I were to adopt the minority view, however, I would still reach the same conclusion under agency law principles. At the time of the accident, Sebelist was acting within the scope of his employment with Carbone. Under the doctrine of *respondeat superior,* Sebelist's driving and negligence can be attributed to Carbone. Thus, for purposes of the automobile exclusion, Carbone was in fact operating the car involved in the accident (through its employee), and the exclusion applies to preclude coverage. This is true even if the severability clause is interpreted to require the application of the exclusion to each insured separately (i.e. as if the exclusion were worded "the insured").

Carbone assumes that adopting the minority view of the meaning of exclusions worded "any insured" automatically means that each specific insured is a distinct and mutually exclusive entity. Here Carbone argues that since Carbone Inc. and Sebelist are both insureds, if the operation of the car is attributable to one (i.e. Sebelist), it cannot be attributable to the other (i.e. Carbone). This is not the case. In support of its view, Carbone quotes *Erdo,* the New Jersey case in which the employee of the subcontractor sought coverage under the general contrac-

tor's CGL policy. In *Erdo,* the court stated that a severability clause "requires that the policy be read as if each named insured is the only insured." *Erdo,* 645 A.2d 806, 810. In *Erdo,* this approach made the employee exclusion contained within the general contractor's CGL policy inapplicable in a suit brought against it by the employee of the subcontractor.

In essence, because of the severability clause, in any given case the employee exclusion only applied to either the general contractor or the subcontractor, but not both. This was because the general contractor and subcontractor were disjoint. In the Carbone CGL policy, both Carbone and its employees are listed as insureds. Even if viewed as the sole insured for purposes of the auto exclusion, however, the actions of Carbone Inc. necessarily encompass the actions of its employees. This is because a corporation is an artificial legal entity which can act only through its employees. In this sense, the acts of the employees within the scope of their employment is a lesser included subset within the set of the company's actions. Therefore, the operation of an automobile by Sebelist in the scope of his employment may also be attributed to Carbone. Thus, Carbone Inc. operated the car within the meaning of the automobile exclusion, the exclusion applies, and coverage is precluded.

Although there are no New Jersey cases exactly on point, several precedents from other jurisdictions provide support for this view. In *Barge v. Jaber,* 831 F.Supp. 593 (S.D.Ohio 1993), *aff'd,* 39 F.3d 1181 (6th Cir. 1994), an employee caused an accident while towing a company trailer with a truck owned by a third party. The employee was indisputably acting within the scope of his employment at the time of the accident. The employer's CGL insurer denied coverage, citing an automobile exclusion in the policy. The victims of the accident claimed that the exclusion did not apply because, *inter alia,* the employer did not "operate" or was not "loaned" the vehicle within the meaning of the exclusion. The court disagreed, stating:

It is well established that a corporation is an artificial entity that can only act through its agents. Thus, acts of an em-

ployee carried out within the scope of his employment, that is[,] acts which the employee has been expressly, impliedly or apparently authorized to do and are done for the benefit of the corporation, are properly imputed to the corporation.

831 F.Supp. at 601 (citations omitted). The court found that the truck had been "loaned to" the employer within the meaning of the auto exclusion, thereby precluding coverage. *Barge* is arguably distinguishable from the present situation, however, since the opinion does not mention whether the employee was a separate insured, whether the policy contained a separation of insureds clause, or whether the doctrine of severability applied. *See also, Classic Hosiery, Inc. v. Royal Ins. Co.*, 172 A.D.2d 987, 568 N.Y.S.2d 254 (1991), *cert. denied*, 78 N.Y.2d 856, 574 N.Y.S.2d 937, 580 N.E.2d 409 (1991) (auto exclusion in CGL policy precluded coverage where car driven by an employee struck a pedestrian).

*Townsend Ford, Inc. v. Auto–Owners Insurance Co.*, 656 So.2d 360 (Ala.1995), in contrast, involved both the agency issue and a separation of insureds clause. In the underlying action, customers who had purchased "program cars" from Townsend Ford sued the dealership claiming that the dealership's salespeople misrepresented the history of the cars. The salespeople told the customers that the cars had been driven only by Ford managers when they had actually been leased to rental car agencies. The customers sued both the sales personnel and the dealership alleging, *inter alia*, intentional fraudulent misrepresentation.

In *Auto–Owners*, the Ford dealership sued its CGL insurer seeking a declaratory judgment that the insurer had to defend and indemnify the dealership. The insurer argued that an intentional act exclusion in the CGL policy precluded coverage. The exclusion stated: "This insurance does not apply to ... 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." 656 So.2d at 362. The dealership (Townsend Ford) contended that the exclusion did not apply to a suit against it because of the separation of insureds clause. Apparently, both Townsend Ford and the sales personnel were insureds under the poli-

cy. Townsend Ford argued that in the action against the sales personnel, the intentional act exclusion applied, but in the action against the dealership the separation of insureds clause prevented its application. In other words, Townsend Ford contended that the intent to defraud was attributable to only one insured—the sales staff—and not the dealership.

The Supreme Court of Alabama rejected the dealership's approach. The court approvingly quoted the trial court's analysis, which emphasized that under agency principles the fraudulent acts of employees are also attributable to the corporation. "Inasmuch as Townsend Ford's salespeople were acting as agents on behalf of the corporation and its business operations, their intent is the intent of the corporation." 656 So.2d at 363. By analogy, Sebelist's operation of the car on behalf of Carbone can be attributed to Carbone Inc. The separation of insureds clause does not alter this result.

**C. Interaction with Other Insurance**

As was noted above, when interpreting insurance contracts courts often look to how the policy in question interacts with other types of available coverage. *See Float–Away Door v. Continental Casualty Co.*, 372 F.2d 701, 708 (5th Cir.), *cert. denied*, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967); *Tri–State Ins. Co. v. Sing*, 41 Ark.App. 142, 850 S.W.2d 6, 8 (1993). The Carbone CGL policy at issue here followed the industry custom of not providing coverage for a risk that is instead typically insured under an automobile policy. *See U.S. Fidelity and Guar. Co. v. Employers Casualty Co.*, 672 F.Supp. 939, 944 (E.D.La.1987), *aff'd*, 857 F.2d 289 (5th Cir.1988). In fact, Sebelist's car was covered by a separate auto insurance policy purchased by Sebelist. The Carbone CGL policy is relevant only because Wilson's damages exceeded the policy limits of Sebelist's auto insurance. In addition to honoring the unambiguous language of the policy, the interpretation adopted here avoids reading the Carbone CGL policy in a way that duplicates coverage provided by car insurance policies.

#### D. Relevance of Language from Other Policies

In his response to General Accident's motion for summary judgment, Keith Wilson notes that preceding versions of the industry standard form CGL contract included a more detailed auto exclusion than that used in the Carbone policy. In particular, earlier versions of the auto exclusion read:

> This insurance does not apply ... [to losses] arising out of the ownership, maintenance, operation, use, loading, or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or (2) any other automobile or aircraft operated by any person in the course of his employment by any insured.

Wilson notes that the Carbone policy lacked the second of the two clauses listed above. Wilson argues that had General Accident wanted to exclude coverage for losses like the one involved here, it could have used the language contained within the second clause.

I reject any suggestion that General Accident's failure to use the language quoted above is relevant here. First, I have concluded that the policy language actually employed in the Carbone CGL policy was unambiguous. The fact that General Accident could have selected an alternative exclusion which might be slightly clearer is irrelevant. And second, there is no evidence that Carbone Inc. was familiar with the previous version of standard policy's auto exclusion when it entered into the CGL contract with General Accident. Therefore, the previous language could not have affected Carbone's understanding of the scope of the exclusion.

#### Conclusion

The Carbone CGL policy excludes coverage for losses arising out of the use or operation of any auto by "any insured." The wording of this exclusion is clear and unambiguous; it expresses an intent to create joint obligations among the insureds. The exclusion is therefore unaltered by the separation of insureds clause. In addition, even if it were impacted, the exclusion would still apply since Sebelist's act of operating the car within the scope of his employment must be attributed to his employer, Carbone Inc. Thus, Carbone Inc. was operating the car at the time of the collision, and General Accident does not have to provide coverage.