[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15059
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-00413-TFM-B

SE PROPERTY HOLDINGS, LLC,

Plaintiff-Appellee,

versus

RUSSELL G. JUDKINS and HIGHWAY 59, LLC,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(July 27, 2020)

Before WILSON, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Faced with a struggling construction business and past-due payments on millions of dollars of personal loans, Russell G. Judkins ("Judkins") transferred various assets to himself and his wife, Linda Judkins ("Mrs. Judkins"), as "tenants by the entirety," or, alternatively, to Florida limited liability companies that Judkins and Mrs. Judkins owned (in whole or in part) as tenants by the entirety. In effect, these transfers made property that was previously reachable by Judkins's creditors now unreachable. Soon after making these transfers, Judkins defaulted on his bank loans—totaling between $15 and $18 million—that he had either borrowed himself or personally guaranteed.

SE Property Holdings ("SEPH"), one of Judkins's creditors, attacked Judkins's transfer of his 50 percent interest in real property to Highway 59, LLC ("Highway 59") as fraudulent in violation of the Alabama Uniform Fraudulent Transfer Act ("AUFTA"). Ala. Code. § 8-9A-4(a). The district court found Judkins and Highway 59 violated AUFTA, ordered Highway 59 to transfer the real property to SEPH within 30 days, and entered a punitive damages award of $300,000 against both defendants. Judkins and Highway 59 appealed. On appeal, they assert the punitive damage award is unjustified and excessive.

We disagree. The district court did not abuse its discretion in finding that Judkins and Highway 59's wrongful conduct justified the punitive damages award.

2

Nor is the punitive damages award unconstitutionally excessive.  Accordingly, we affirm.

## I.

Rewind to 2006, when the housing market was booming.  Back then, Judkins was one of three members of Coastal Construction, LLC ("Coastal), a residential real estate development company that crumbled during the 2008 recession.  Coastal operated like this: Coastal would take out loans from Vision Bank—SEPH's predecessor—and other banks to finance its construction of new beach houses in the Gulf Coast region.  Coastal would then sell the new beach house, repay the loans, and distribute the profit among its three members— Judkins, Hans Van Aller, III, and Robert Harris (the "Members").  On some of those loans, the Members signed guaranties that made them jointly and severally liable for the loans.  On other loans, the individual Members were the principal borrowers.  All told, Judkins guaranteed or borrowed between $15 and $18 million in loans.  The loans from Vision Bank alone totaled over five million dollars.

This arrangement worked fine until the 2008 recession hit and Coastal could not sell its beach houses.  Consequently, Coastal could no longer pay its loans, and the Members were forced to pay personally the interest payments.  By fall 2008, Coastal began to default on its loans.  Between September 2008 and June 2010,

3

various lenders, such as Vision, RBC Bank, Pen Air Federal Credit Union, and Trustmark sued Coastal and its guarantors, including Judkins.

Around June 25, 2008 (after Coastal had begun to default on the loans, but before the banks sued), Judkins met with a Florida attorney, David Hightower. According to SEPH and the district court's findings, the purpose of this meeting was to develop a scheme to shield the entirety of Judkins's assets from his creditors. Judkins maintains that he met with Hightower because his father-in-law's terminal illness prompted him to develop an estate plan. But everyone agrees on the results of this meeting: beginning on July 28, 2008 Judkins identified his unencumbered and non-exempt assets (which creditors could reach) and—with Hightower's assistance—transferred those assets either to himself and his wife as tenants by the entirety, or to limited liability companies that Judkins and his wife owned in whole or in part. Tenancy by the entirety is a form of ownership available to married couples under Florida law whereby the property is unreachable by creditors of only one spouse. By the end of August 2008, Judkins did not own any unencumbered, non-exempt property in his own name. In effect, Judkins was legally insolvent but still held substantial assets with his wife.

At issue here is the transfer of Judkins's fifty percent interest in real property off Highway 59 in Gulf Shores, Alabama. Since June 1993, Judkins and his business partner, Gary Sluder ("Sluder"), each owned one-half interest in the

4

property as tenants in common.  They leased this property to Gene's Floor

Covering II, Inc.—Sluder and Judkins's flooring business.  Judkins controlled all

aspects of the business and Sluder was a silent partner.  On July 28, 2008,

Hightower organized Highway 59, LLC, of which Judkins and Mrs. Judkins owned

fifty percent as tenants by the entirety and Sluder and his wife owned fifty percent

as tenants by the entirety.  Judkins and Sluder then transferred both couples'

interests in the real property to the newly formed LLC.  After the transfer, Judkins

continued to use the property for his flooring business.  At trial, a real estate

appraiser testified that the value of the real property was $795,000.00.  Judkins did

not offer any evidence to rebut this appraisal.

SEPH sued Judkins and Highway 59 in the United States District Court for

the Southern District of Alabama.  After two days of trial, the district court issued a

judgment in favor of SEPH.[1]  The court held that Judkins transferred his interest in

the real subject property with the actual intent to hinder, delay or defraud his

---

[1] SEPH only seeks to set aside the Highway 59 transfer, but the other transfers deserve notice.  The district court found:

> Similar to the Hwy 59 transfer, Judkins transferred his shares of Gene's Floor Covering II, Inc., to GFC Holdings, LLC, another Florida company that was formed by Hightower on July 28, 2008.  Judkins and Mrs. Judkins owned one hundred percent (100%) of GFC Holdings, LLC, as tenants by the entirety.  With Hightower's assistance, Judkins, also, transferred his and his wife's real property directly to themselves as tenants by the entirety.  Hightower, also, drafted a mortgage agreement pursuant to which Judkins and his wife as tenants by the entirety secured a purported loan to Judkins.

5

creditor, SEPH.  The district court then turned to the proper remedy under Alabama law.  First, in accordance with Alabama's fraudulent transfer statute, the district court ordered Highway 59 to transfer the property at issue to SEPH.  It further found punitive damages were appropriate because Judkins and Highway 59 "consciously or deliberately engaged in fraud, wantonness, and malice with regard to SEPH."  After weighing the factors for determining a reasonable punitive damages award, as laid out by the United States Supreme Court in *BMW North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) and the Alabama Supreme Court in *Green Oil v. Hornsby*, 539 So.2d 218, 223 (Ala. 1989),[2] the district court issued a punitive damages award of $300,000 against Judkins and Highway 59, jointly and severally.

## II.

Judkins and Highway 59 appeal both the propriety of a punitive damages award, as well as the amount of the award.  "After a bench trial, we review a district court's decision to award or deny punitive damages for abuse of discretion."  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1035

---

[2] In *Green Oil v. Hornsby*, the Alabama Supreme Court adopted the factors that Justice Houston set forth in his concurrence in *Aetna Life Ins. Co. v. Lavoie*, 505 So. 2d 1050, 1062 (Ala. 1987) (Houston, J., concurring specially)).  The parties and district court refer to these factors as the "*Lavoie* factors."

(11th Cir. 2014).[3]  We review the district court's application of Alabama's standards for punitive damages for clear error.  *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1334 (11th Cir. 1999) (reviewing district court's determination of reprehensibility, which required an interpretation of state law, for clear error).  Whether a punitive damages award is unconstitutionally excessive is subject to de novo review.  *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 443 (2001).

## III.

Judkins and Highways 59's appeal centers on the district court's award of punitive damages.  In addition to ordering Highway 59 to transfer the property at issue to SEPH, the district court imposed a punitive damages award against Judkins and Highway 59 pursuant to the AUFTA, which states:

> A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

Ala. Code § 8-9A-4(a).  To determine actual intent, the statute provides eleven factors courts may consider (the "AUFTA factors"), including but not limited to,

---

[3] Appellants assert that we should review the decision to award punitive damages *de novo*.  That standard does not apply here.  Instead, it applies when we review the "denial . . . [of a] motion for judgment as a matter of law on the issue of punitive damages" in the context of a district court's review of a jury's punitive damages award.  *See Goldsmith v. Bagby Elevator Company, Inc.*, 513 F.3d 1261, 1275 (11th Cir. 2008); *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1211 (11th Cir. 2010) (reviewing jury award of punitive damages *de novo*).

whether the transfer was disclosed or concealed.[4]  *See id.*  If the trial court finds the

debtor made a fraudulent transfer, it has wide discretion in issuing a remedy: it

may avoid the transfer, issue an attachment against the asset, and, "subject to the

applicable principles of equity and in accordance with applicable rules of civil

procedure . . . [grant] [a]ny other relief the circumstances may require."  Ala. Code

§ 8-9A-7(a).[5]  And Alabama law allows punitive damages: the Alabama punitive

damages statute provides, "[p]unitive damages may not be awarded in any civil

action . . . other than a tort action where it is proven by clear and convincing

---

[4] Section 8-9A-4(b) provides:

(b) In determining actual intent under subsection (a), consideration may be given, among other factors, to whether:

> (1) The transfer was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer was disclosed or concealed; (4) Before the transfer was made the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Ala. Code § 8-9A-4(b).

[5] Further, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."  Ala. Code § 8-9A-7(b).

evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.  Ala. Code. § 6-11-10.

In determining the *amount* of a punitive damages award, the district court followed the Supreme Court's guidance in *BMW North America, Inc., v. Gore*, 517 U.S. 559, 574 (1996).  The factors the Supreme Court advised the courts to consider in *Gore* include:

> (1)    The degree of reprehensibility of the defendant's misconduct;
> (2)    The disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and
> (3)    The difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Id*. at 575.  The Alabama Supreme Court has laid out several additional considerations, including whether the defendant engaged in "any concealment, or 'cover-up,'" and "the financial position of the defendant."  *Green Oil v. Hornsby*, 539 So.2d 218, 223 (Ala. 1989).[6]

---

[6] The Alabama Supreme Court's opinion in *Green Oil* recommends that trial courts consider the following seven factors in setting the amount of punitive damages:

> (1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.
> (2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.

9

A.  The Punitive Damages Award Against Judkins

Judkins and Highway 59 raise two objections to the imposition of the punitive damages award against Judkins: that a punitive damages award is not available in this case and, even if it is available, the punitive damages award is grossly excessive.   We take each in turn.

1. Whether an Award of Punitive Damages is Available

Judkins argues that he should not be held liable for punitive damages under the AUFTA because the district court erred in finding that the one of the AUFTA factors—whether the transfer was disclosed or concealed—was met.   *See* Ala. Code. § 8-9A-4(b)(3).[7]  Judkins claims, contrary to the district court's findings, that he disclosed the transfer of real property to Highway 59.[8]  Had Judkins

---

(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.
(4) The financial position of the defendant would be relevant.
(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.
(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.
(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.

505 So. 2d at 1062.

[7] On appeal, Judkins does not challenge the district court's findings that an additional seven of the eleven AUFTA factors were also met.

[8] Judkins relies on the AUFTA and cases applying that statute to argue that his conduct was not reprehensible.  That argument conflates the statutory inquiry to determine whether the transferor may be liable for fraudulent transfer and the reasonableness of the amount of punitive

10

disclosed the transfer to his creditor, we *might* be inclined to agree with him.  But

he did not.  Judkins and Sluder recorded the deed transferring the property to

Highway 59 in the Office of the Judge of Probate for Baldwin County, Alabama.

Judkins claims that recording is enough to put his creditors on constructive notice

of the transfer.[9]  But all Judkins and Sluder accomplished by recording the deed

was ensure that the title to the property was protected under Alabama law.  Ala.

Code § 35-4-50; Ala. Code § 35-4-62.  By Judkins's logic, any time someone

conveys real property in Alabama and records the deed—no matter the underlying

fraud—a creditor cannot attack that transfer because the creditor is "on notice."

---

damages award based on the Supreme Court's decision in *Gore*, 517 U.S. at 562.  AUFTA puts forward eleven factors, including whether the transfer was disclosed or concealed, for courts to employ to determine the actual intent of the transferor.  Ala. Code § 8-9a-4(b).  Together, these considerations are referred to as the "badges of fraud."  In *Gore*, the Supreme Court instructed courts to consider the "degree of reprehensibility" of the defendants' conduct.  While the inquiries may overlap, a court is not *required* to find the defendant concealed his conduct in order to award punitive damages.

[9] Ala. Code 1975 § 35-4-90(a) provides that:

All conveyances of real property, deeds, mortgages, deeds of trust, or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees, and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees, or judgment creditors.

In the context of property ownership disputes, the Alabama Supreme Court held that although "the purpose of our recording laws is to provide a means to protect and give notice of conveyances," the statute does not *mandate* recording of all conveyances. *Deutsche Bank Nat'l Tr. Co. as trustee of any specific residential mortgage-backed security (RMBS) at issue v. Walker Cty.*, No. 1160926, 2019 WL 2710224, at *8 (Ala. June 28, 2019).  *See Smith v. Arrow Transp. Co.*, 571 So. 2d 1003, 1006 (Ala. 1990) ("A deed that is unrecorded is good between the grantor and grantee, but is void against bona fide purchasers for value, mortgagees, and judgment creditors without notice.")

11

Such a result would kneecap fraudulent transfer statutes like the one the State of Alabama has enacted.  And Judkins cites no case, in Alabama or any other jurisdiction, where a district court declined to award damages—punitive or otherwise—because the defendant had recorded the fraudulent transfer.   Absent any Alabama statutes or case law instructing courts to apply the ill-fitting doctrine of constructive notice to the punitive damages analysis, we decline to rely on it here.

More to the point, the evidence supports the district court's finding that Judkins affirmatively omitted evidence of the transfer in the personal financial statement he submitted to Vision Bank.  That statement contains no mention of Highway 59, LLC.  Judkins claims that this failure was merely an "honest mistake" and a "cursory glance" at the financial statement reveals a change in his property interest because it shows that his interest in "personal property" with a market value of $300,000 in 2007 was replaced with his interest in "Judkins Sluder LLC" with a market value of $300,000 in 2008.  The district court did not accept his explanation.  Instead, it found that the third AUFTA factor was present because

> [T]he transfer was not disclosed to Vision Bank.  Judkins' Personal Financial Statement, which was provided to Vision Bank a few months after he transfer, did not list Hwy 59 as an asset, and Judkins admitted he misidentified the asset on this Personal Financial Statement.  Further, the Personal Financial Statement did not inform Vision Bank Judkins made personal assets exempt when he transferred them to tenant by the entirety ownership, which is the type

12

of change in financial condition of which Judkins agreed to notify Vision Bank.

The testimony and exhibits at trial support the district court's finding that Judkins concealed the transfer. Therefore, the district court did not abuse its discretion in finding that Judkins was liable under the AUFTA, and therefore punitive damages were available.

### 2. Whether the Punitive Damages Award is Excessive

Judkins also claims the punitive damages award of $300,000 is grossly excessive. This Court has held that "punitive damages must bear a 'reasonable relationship' to actual damages." *Johansen v. Combustion Eng'g., Inc.*, 170 F.3d 1320, 1336 (11th Cir. 1999); *see also Gore*, 517 U.S. at 580 ("The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff."). Absent an award of compensatory damages, Judkins asserts, punitive damages bear no relationship to actual damages and are therefore unconstitutionally excessive.

But the district court did not just enter a punitive damages award against Judkins and Highway 59: it also elected to remedy the harm against SEPH by ordering Highway 59 transfer the property to SEPH by quitclaim deed.[10] The transfer determines the equation we use to analyze an appropriate ratio.

---

[10] Ala. Code § 8-9A-8(b) provides this remedy for a fraudulent transfer :"to the extent a transfer is voidable in an action by a creditor under Section 8-9A-7(a)(1), the creditor may

13

Consistent with *Gore*, our case law does not impose a requirement that the punitive damages bear a relationship to compensatory damages specifically. Instead, we consider "the ratio between the actual or potential harm suffered by the plaintiff and the punitive damages award." *McGinnis v. American Home Mortgage Servicing, Inc.*, 901 F.3d 1282, 1288 (11th Cir. 2018); *see also TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443,460 (1993) (noting the ratio looks to "the harm that is likely to occur from the defendant's conduct as well as to the harm that actually occurred.")  The appropriate ratio, therefore, is not based on a comparison of compensatory damages to the punitive damages award, but on *harm* likely to occur or that has actually occurred.  Suppose Highway 59 had sold the property at issue and the district court elected to award SEPH compensatory damages in the amount of the value of the property, which in this case was $795,000.  In that case, according to their argument, Defendants would not have any objection to the reasonableness of the $300,000 punitive damages award.  But in effect, there is no difference between those awards: either transferring the property or awarding compensatory damages serves to make SEPH whole.  Thus, nothing requires the district court remedy SEPH's harm in the form of compensatory damages in order to award punitive damages.

---

recover . . . judgment for conveyance of the asset transferred.  The judgment may be entered against . . . [t]he first transferee of the asset or the person for whose benefit the transfer was made." Ala. Code. § 8-9A-8(a)(1).

14

Moreover, the ratio between the harm (i.e., the value of the asset transferred) and the punitive damages award is less than 1:1.  The evidence at trial indicated that the value of the Highway 59 property was $795,000, and Judkins transferred his 50 percent interest in that property (approximately $397,500) to the LLC.  The $300,000 damages award is less than half the value of the property and less than Judkins' interest in that property. We have upheld ratios much higher than 1:1. *See, e.g. McGinnis v. American Home Mortgage Servicing, Inc., 901 F.3d 1282, 1290* (11th Cir. 2018) (ratio of 5.9:1); *Bogle v. McClure*, 332 F.3d 1347, 1362 (11th Cir. 2003) (ratio of 3.8:1).  Having considered the various factors as laid out by the Supreme Court of the United States and the Supreme Court of the State of Alabama, we hold the district court did not err in entering an award of $300,000 in punitive damages against Judkins.

B. The Punitive Damages Award Against Highway 59

Judkins and Highway 59 also object to the propriety and amount of the punitive damages award as against Highway 59.  Again, we take each argument in turn.

1. Whether an Award of Punitive Damages is Available

Judkins and Highway 59 first claim that punitive damages against Highway 59 are inappropriate.  Pursuant to the AUFTA, a transfer is fraudulent, only if the transfer was made "with actual intent to . . . defraud any creditor."  Ala. Code § 8-

15

9A-4(a).  Because the limited liability company did not exist at the time Judkins

and his attorney formulated the scheme to transfer his assets, Judkins argues that

Highway 59 did not  intentionally participate in the transfer.

This argument ignores reality in favor of artificial, legal distinctions.  True,

Highway 59 is a separate "legal entity," but it is also "an artificial person, and can

only act through its agents."  *Townsend Ford., Inc.*, 656 So. 2d 360, 363 (Ala.

1995) (citing *Warwick Development Co. v. GV Corp.*, 469 So. 2d 1270, 1276 (Ala.

1985) (holding that the intent of a company's employees can be attributed to the

company).  The evidence shows that Judkins—Highway 59's agent—created and

controlled Highway 59 "for the purpose of fraudulently transferring assets."

Because Judkins acted with fraudulent intent, so did Highway 59.  Moreover,

whether Highway 59 existed when Judkins first concocted the scheme is irrelevant,

because his fraudulent transfer would not have been possible unless there was

someone, or something, to accept it.   As the district court found, Highway 59 "was

an instrument of, and participant in, fraud since its inception" and "shared Judkins'

intent."  In its findings, the district court noted that "Judkins and Hwy 59

effectuated the subject transfer with the intentional and deliberate purpose of

injuring Judkins' creditor, SEPH," and "Judkins and Highway 59 acted with the

deliberate and actual intent to defraud."  Our review of the entire record, including

the trial transcripts, confirms those findings are not clearly erroneous.

16

Accordingly, the district court did not abuse its discretion in awarding punitive damages against Highway 59.

Judkins and Highway 59 also claim that the district court should not have issued punitive damages against Highway 59 because it did not find that Sluder (who owned half of Highway 59 prior to the fraudulent transfer as a tenant in common) acted in bad faith. Accordingly, they contend that the district court failed to consider "[t]he financial position of the defendant," contrary to the Alabama Supreme Court's guidance and that entering a judgment against Sluder's interest in Highway 59 is inequitable. *Lavoie*, 505 So.2d at 1062.

Although the parties dispute whether Sluder acted in bad faith, the district court was not required to make that determination in order to issue the punitive damages award against the entity. For one, Sluder's intent is irrelevant in determining whether an entity acted fraudulently: the Alabama Supreme Court has held that "a culpable intent by any of the corporate agents involved in a transaction amounts to corporate fraud, regardless of the facts that other corporate agents . . . had no such fraudulent intent." *Townsend Ford Inc.*, 656 So. 2d at 362. Sluder's alleged good faith has no effect on the fraudulent acts of Highway 59, and therefore the district court was correct in not limiting the punitive damages award to Judkins's interest in the company. Further, the district court *did* consider Highway 59's finances, albeit briefly. The district court stated that Highway 59's

17

financial condition was not a "significant" consideration because it is "an instrument of fraud that would not exist except for Judkins' and Hwy 59's fraud." The district court addressed Highway 59's financial condition, but found other considerations outweighed it.  That determination does not constitute clear error.

2. Whether the Amount of the Punitive Damages Award is Excessive

Finally, Judkins and Highway 59 object that "the same issue of proportionality discussed in relation to Judkins would make an award of $300,000 against Highway 59 so excessive as to violate due process."  For the same reasons the $300,000 award was not grossly excessive as to Judkins, it passes constitutional muster for Highway 59.  The district court did not abuse its discretion here either.  *See supra* pp. 11–13.

We therefore **AFFIRM** the district court's award of punitive damages against Judkins and Highway 59.